*MHN*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Deon Hughes, a minor at the time of )
the incident, Darien Weaver, a minor, )
their guardian Daphne Weaver, on behalf )
of themselves, her children and herself, )
                       Plaintiffs, )
               v. )
                            )
The Board of Education of the Argo )
Community High School District 217; )
Dr. Frank Stout, former Superintendent of )
Argo Community High School District; )
Dr. Kevin O'Mara, current Superintendent )
Of Argo Community High School District )
217;  Thomas Dixey, former Principal of )
Argo High School District 217; Dr. Kathy )
Black, former Assistant Principal and )
current Principal of Argo Community High )
School District 217; Larry Burda, Dr. Sandra)
Little and James Rodriquez, all Dean of )
Students of Argo Community High School )
District 217, in their official and personal )
capacities; Eugene G. Wroldewski, )
President of Board of Education of  Argo )
Community High School District 217; Pam )
L. Valdez, Vice President of the Board of )
Education of Argo Community High School )
District 217; Judy A. Rivera, Terrence )
Pappas, William A. Parra, Jr., Steven )
Memishi and Mary Van Allen, as Directors, )
members and Public Officials of the Board )
of Education of Argo Community High )
School District 217 in their official capacities)
and Richard P. Majka, Hearing Officer for )
the Board of Education of the Argo )
Community High School District 217, in his )
official capacity, )
                    Defendants. )

Case No.

Civil Rights Complaint for
Declaratory Relief,
Injunctive Relief and Damages

DEMAND FOR JURY

**09CV4942**
**JUDGE John F. Grady**
**MAG. JUDGE Jeffrey Cole**

RECEIVED
8-12-2009
AUG 1 2 2009
MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

## COMPLAINT

I. Introduction

1.  This is an action pursuant to 42 US C. 1983 and US C. Section 2201, 2202, 1331, 1343 and that seeks declaratory relief, injunctive relief and damages against the Argo Community High School Dist. 217(the District) and its officers and administrators (collectively "Defendants") for their policy and practice of unlawfully infringing upon the constitutional and statutory rights of my children Deon Hughes and Darien Weaver, and I myself (Daphne Weaver) by wrongfully, arbitrarily, maliciously, and discriminatorily excluding Deon and Darien from school or wrongfully arbitrarily reassigning them from comprehensive school program to alternate school programs and or independent study programs for alleged violation of the Districts student conduct rules. The Supreme Court in landmark case Goss v. Lopez., 419 U.S.565 (1975), held that the due process clause of the Fourteenth amendment to the United States Constitution protects public schools students liberty and property interests in their public education by requiring school officials to provide sufficient notice and a hearing to students whom the officials want to exclude from school for disciplinary reasons. Accordingly, the State of Illinois has enacted a comprehensive statutory scheme that delineates the minimum procedural protections afforded to students subject to disciplinary proceeding Illinois State Board Education 105 ILCS 5/10-22.6. Deon and Darien attended comprehensive high school in ACHS District 217, but have been arbitrarily without due process of law, assigned by the District's board of Education, Superintendents of the District; Dr. Stout, Dr. O'mara. Administrator Principal Black, Principal Dixey and Dean Burda, Dean Little, and Dean Rodriguez to Alternative Program. Defendants fail to schedule and/or invite Deon, Darien, or I to meeting(s) for an Alternative Educational Plan at the earliest time after being placed. Defendant(s) fail to develop and Alternative Education Plan for Deon or Darien at the time of placement. Plaintiffs have had rights violated under the Due Process and Equal Protection Clause of the

Fourteenth Amendment to the U. S. Constitution, the Due Process provisions of the Constitution of the State of Illinois and certain other federal and state laws and regulations.

2.    Specifically, Defendants systematically failed to provide proper notice(s) and hearing(s) to Plaintiffs prior to involuntarily excluding them from school and/or involuntarily reassigning them to Alternative Program or Independent Study programs. These policies and practices violate (our) Plaintiffs rights to substantive and procedural due process under the Fourteenth Amendment to the United States Constitution, Article I, Section 2, of the Constitution of the State of IL, and ISBE school code 105ILCS 5/13A-2.5, 105ILCS5/13A-4, Section 13A-5, 13A-9. Defendants systematically failed to follow Illinois State Board Education rules, regulations, guidelines, and procedures regarding request for records, amendments to records or challenges properly. Defendants fail to provide Plaintiffs with requests in a timely manner as required. Failed to inform Plaintiffs of any rights association with the request, amendment or challenge of records. Failed to provide informal and formal hearing within time frame set forth under the guidelines. Failed to inform or allow Plaintiffs of the right to submit and have included in Plaintiffs' children temporary record a statement regarding Plaintiffs disposition of the contents of the record and the decision of the District. Defendants failed to allow Plaintiff to submit said letter of disposition into my children's record, 105 ILCS10/4, 105 ILCS 10/5, 105 ILCS 10/7.

3.    Defendants' policies, customs and actions have had a disparate negative impact on and have arbitrarily, maliciously and discriminatorily excluded Deon and Darien from comprehensive school programs and assigned them to substandard alternative programs. Plaintiffs informed and believed that the Defendants' conduct was under taken with the intent to conspire to injure, oppress, threaten or intimidate, and has had the effect of all of the acts mentioned above against Plaintiffs because of right to freely exercise any right or privilege secured by the Constitution and having tried to exercise this right to Equal Protection under the Fourteenth Amendment to the U.S. Constitution,

Art. I, Section 2 of the Illinois Constitution. The government code section and implanting regulations at Title 18, Section 245 and its implanting regulations.

4. Defendants systematically either refused to enroll Plaintiffs in Argo Community High School District 217 or enrolled Plaintiffs in substandard alternative programs; thereby illegally denying Student Plaintiffs their fundamental right to a public education in violation of Article X, Section 1 of the Constitution of the state of IL. 105 ILCS 5/2-3.13A, 5/10-20.12, 5/10-22.5A, 5/14-1.03A, 5/26-1, 5/26-2, 23IL. Administrative Code 375.

5. Plaintiffs have sought unsuccessfully to persuade Defendants to discontinue these unconstitutional and unlawful practices and compensate Plaintiffs' for the harm these practices have caused. Plaintiffs now require the aid of this court in securing and enforcing our rights. While defendants has placed Plaintiffs in Alternative program., the District has filed to provide Plaintiffs proper notice before doing so, a meeting as required immediately after placement with transferring District and Plaintiffs. Failed to provide or create an alternative educational plan with academic behavioral components and the duration of the placement and plan. Nor has the District provide compensatory damages and education services to Plaintiffs, or modified its policies and procedures to ensure that Deon and Darien will not be unlawfully excluded from school in the future. With this complaint, Plaintiffs seek declaratory and injunctive relief that will require Defendants to bring their policies and practices into compliance with State and Federal law. We also seek compensatory relief in the form of monetary damages and compensatory educational services to compensate for and repair the harm visited upon Plaintiffs education and hopes for future success.

## II. JURSDICTION and VENUE

6.  Plaintiffs claims for declaratory, injunctive, and monetary relief are brought pursuant to the Fourteenth Amendment to the Constitution of the United States, 42 U.S.C. 1983; 1331, 1343, 2201, and 2202; Article I, sections 2 and 5 of the Illinois Constitution, Article X Section 1 of the Constitution of the State of Illinois, and the Illinois State Board of Education School Code Sections 105 ILCS5/10-22.6, 105 ILCS 5/13a. And 105 ILCS 10/9.

7.  This being an action for injunctive, declaratory, and compensatory relief to redress the deprivation under color of State law of rights, privileges, and immunities guaranteed by the U.S.C, jurisdiction is conferred on this court by 28 U.S.C. section 1331, 1343, 2201, and 2202. The Court has supplemental jurisdiction over the State law claims alleged in this complaint pursuant to 28 U.S.C. 1367, as all state and federal law claims a rise from the same nucleus of operative facts.

8.  All administrative remedies have been exhausted, are inadequate to provide relief to Plaintiffs and/or are rendered futile by the District's polices and practices.

9.  The Events giving rise to the claims alleged in this complaint arose in the Count of Cook, Illinois. Venue is proper in the Northern District of Illinois, Eastern division.


III. PARTIES


A. Plaintiffs


10. Plaintiff Deon Hughes although temporary residing outside of District was at all relevant times a student at Argo Community High School in Summit, Illinois and had intended to continue his attendance in District 217 at ACHS

until he graduated. Plaintiff Deon Hughes as well as his mother/guardian is a resident of the County of Cook, Illinois.

11.  Plaintiff Darien Weaver, although temporary residing outside of District was at all relevant times a student at ACHS in Summit, Illinois, and intends to continue her attendance in the District at ACHS until she graduates. Plaintiff Darien Weaver as well as her mother/guardian is a resident of the County of Cook, Illinois.

12.  Plaintiff Daphne Weaver is the mother/ guardian of Deon Hughes and Darien Weaver. Plaintiff Daphne Weaver as well as children is a resident of the County of Cook, Illinois.

B. Defendants

13.  Defendant Board of Education of Argo Community High School District 217(Board of Education) is the elected policy-making body of the approximately, 1800 student and 123 employees. Argo Community High School District 217. Under Illinois law, the Board of Education is the governing body charged with the administration of public schools within the city of Argo/Summit, Illinois.  Defendants Eugene G. Wroblewski, President of Board of Ed. Of the District 217; Pam L. Valdez, Vice-President of the Board of Education of the District 217 Argo Community High School; Judy A. Rivera, William A. Parra, Jr., Terrence Pappas, Steven Memishi, and Mary Van Allen, are public officials of District 217 ACHS who are charged with the duty of setting and executing policy for the administration of the District, including policies regarding student conduct and discipline. All acts taken by each of the individual Defendant were taken in the course and scope of their employment and were taken under color of state law... Defendants Wroblewski, Valdez, Rivera, Parra, Jr., Pappas, Memishi, and Mary Van Allen are sued here in their official capacity.

14.  Defendants, Dr. Frank Stout and Dr. Kevin O'mara, (former and present) Superintendent of District 217 Argo Community High School was appointed

by the Board of Education to implement policies created by the Board of Education or mandated by State and Federal law. Defendants Stout and O'mara was/is ultimately and specifically responsible for the implementation of State and Federal law regarding student conduct and discipline in the implementation of student conduct and discipline polices promulgated by the Board of Education, and the assignment of students in the District to alternative educational programs. All acts taken by Defendants Dr. Stout and Dr. O'mara were taken in the course and scope of their employment and were taken under color of state law. Defendants Stout and O'mara are sued here in their official and individual's capacity 105 ILCS5/10-16.7 and 5/10-21.4.

15. Defendants Thomas Dixey and Dr. Kathy Black, Principal of Argo Community High School District 217, is appointed by the Board of Education District 217 to assume administrative responsibilities and instructional leadership, under the supervision of the superintendent, and in accordance with reasonable rules and regulations of the board, for planning operation and evaluation of the educational program of the attendance area to which he or she is assigned. That his or her primary responsibility is in the improvement on instruction. The majority of the time spent by a principal shall be spent on curriculum and staff development through both formal and informal activities, establishing clear lines of communication regarding school goals, accomplishment practices and polices with parents and teachers. The principal shall submit recommendations to the superintendent concerning the appointment, retention, promotion and assignment of all personnel assigned to the attendance center.

16. Defendants Larry Burda, Dr. Sandra Little, Dean James Rodriguez, Dean of (ACHS) District 217 is appointed by the Board of Education District 217, at the recommendations made by the Principals of Argo Community High School.

17. Defendant Richard P. Majka, The Hearing Officer appointed by Argo Community High School District 217 Board of Education by the recommendation of the Superintendents of Argo Community High School. At

which his primary responsibility shall be to report to the Board of Education a written summary of evidence presented or heard at the hearing.

## IV. THE CONSTITUTIONAL and STATUTORY FRAMEWORK

A. Fundamental Right to a Public Education.

18.     The Illinois Constitution recognizes that fundament goal of the People of the State is the educational development of all persons to the limits of their capacities. The General Assembly finds and agrees. In light of that principle, the children of this State constitute its most important resource, and in order to enable those children to reach their full potential, the State must provide them the quality public education that Constitution of the State of Ill. mandates 105 ILCS 5/13A-1(a). The children in Illinois have the fundamental right to a free an appropriate public education. This right is guaranteed by Article X, Section1 and (2) of the Illinois Constitution, Every school district in the State shall do all it can to ensure a safe and appropriate educational environment for all of its students. While school district shall comply with all applicable federal laws and regulations, they should do so consistent with the goals and policies stated in this article.

B. Right to Due Process

19.     The Fourteenth Amendment to the United States Constitution, and Article I, Section 1 and 2 of the Ill. Constitution, provide that no person shall be deprived of life, liberty, or property without due process of law nor be denied the equal protection of the laws.

20. As affirmed in Goss v. Lopez. 419 U.S. 565 (1975), all public school students have liberty and property interests in public education that are protected under the Fourteenth Amendment. Accordingly, public school students cannot be excluded from or denied such education, even for a brief disciplinary suspension, without prior notice of the reason for such action and an opportunity to respond to the charges in a hearing.

21. The Illinois Legislature adopted statue, 105 ILCS 5/13A-1, as amended, incorporating the constitutional safeguard, protections for students for who expulsion is recommended. This statutory scheme which provides the minimal procedure due process required by law to students who are subject to school discipline proceedings described below: Student is barred from attending any school within the regular school district during the term of expulsion and is instead assigned to an alternative school program, most commonly a alternative school, 105 ILCS 5/10-22.6 et seq, 105 ILCS 5/13A et seq and The Argo Community High School Planner-Calendar Book detail the circumstances under which a student may be referred for expulsion as well as the student's right to due process under the law in such an instance.

22. Under Illinois law a student may only be denied the right to a public school education during a short period of suspension. Due process procedures do apply to short term expulsion or exclusion 105 ILCS 5/10-22.6(b). A student should not be present on school grounds during a suspension 105 ILCS 5/10-22.6.(f) found guilty of gross disobedience or misconduct shall not be suspended for a period not to exceed 10 school days under the regulation or authorization of the Board of Education. Any longer involuntary removal of a student from the comprehensive education program for disciplinary reasons requires the District to comply with the process for "expelling: a student from school. If a pupil is "suspended" due to gross disobedience and misconduct by the superintendent of the district or the principal, assistant principal, or dean of students, under the authorization or the regulations of the Board of Education. For such acts in the school or misconduct on the school bus, and no action shall lie against them for such suspension.

1) Any suspension shall be reported immediately to the parent of student, along with a full statement of the reasons for such suspension and a notice of their right to review, of a copy of which shall be given to the school board.

2) Upon request of the parent the school board or a hearing officer appointed by board shall review such action of the Superintendent or Principal, Assistant Principal, or dean of students.

3) At such review the parents of the student may appear and discuss the suspension with the board or its hearing officer.

4) If hearing officer is appointed by the Board he shall report to the board a written summary of the evidences heard at the meeting.

5) After its hearing or upon receipt of the written report of its hearing officer, the Board may take such action as it finds appropriate.

23. Expulsion is the involuntary removal of a student from school exceeding10 days 105 ILCS5/10-22.6b. In, effect, an expelled student is barred from attending any school within the regular school district during the term of expulsion and is instead assigned to an alternative school program, most commonly an alternative school. 105 ILCS5/10-22.6b, 105 ILCS 5/13A-4. School Code 105ILCS5/10-22.6, 105ILCS 5/13A.et seq., details the circumstances under which a student may be referred for expulsion as well as the student's right to due process under the law in such an instance. Upon determining that a student has committed one of the offenses enumerated in the District's Calendar-Planner, or Illinois School code 105 ILCS 5/10-22.6(a), a student facing expulsion must, at minimum, be afforded the following due process rights.

1) Expulsion shall take place only after the parents have been requested to appear at a meeting of the board, or with a hearing officer appointed by it, to discuss their child's behavior.

2) Such request shall be made prior to the hearing, by registered or certified mail and shall state the date and place of the hearing, a statement of specific facts and the charges upon which the proposed expulsion is based,

notice of opportunity for student and/or students parent to appear in person
or to be represented by attorney. To inspect and obtain all documents to be
used at the hearing, to confront and question all witnesses who testify at
the hearing, to question all other evidence on the student's behalf,
including witness Illinois School Code 105 ILCS 5/10-22.6 et seq., and
105 ILCS 5/13A et seq., a decision to expel must be supported by a
finding that the student omitted an expellable offense and, in all cases.
Except those involving the "Zero Tolerance" offense enumerated in 5/10-
22.6(a). of the Illinois School Code 105 ILCS 5/13A et seq, a finding that
either other means of corrections are not feasible or have repeatedly failed
to bring about proper conduct, or due to the nature of act, the presences of
the student causes a continuing danger to the physical safety of the student
or others. Illinois School Code 105 ILCS 5/10-22.6et seq, 105 ILCS 5/13A
et seq. These required findings must further be based upon substantial
evidence relevant to the charges adduced at the expulsion hearing and may
not be based solely upon hearsay evidence.

24.   If a student is order expelled, the Board of Education may refer the student
while determined to be subject to expulsion in the manner provided by Section
10-22.6 may be immediately transferred to the Alternative Program.

   1)   At the earliest time following that transfer appropriate personnel from the
   sending school district and appropriate personnel of the alternative
   program shall meet to develop an alternative education plan for the
   student.

   2)   The student's parent shall be invited to this meeting.

   3)   The student may be invited. The alternative education plan shall include,
   but not be limited to all of the following:

      1)   The duration of the plan, including a date after which the student may
      be returned to the regular educational program in the public schools of the
      transferring district.

      2)   The specific academic and behavioral components of the Plan.

      3)   A method and time frame for reviewing the student's progress.

25.     Thus, after expulsion hearing through which the student has been afforded
        significant due process rights; 105 ILCS 10-22.6, Section 13A-25 the Board
        of Education may impose the involuntary transfer of a student to alternative
        school. An alternative school program established under this Article is subject
        to the other provisions of this code that apply generally in the public school of
        this State and the rules and regulations promulgated there under Safe School
        Law 105 ILCS 5/13A -1 et seq,.

                              V. FACTS

                   Allegations common to Plaintiff Student
             Students Plaintiffs are the Children of Daphne Weaver


26.     Plaintiffs are students in Argo Community High School District 217.
27.     Each Student Plaintiff was allegedly involved in an incident in which the
        Plaintiff was alleged to have violated the District's student conduct rules.
28.     As a result of being involved in the alleged disciplinary incident, each
        Plaintiff was excluded indefinitely from the Districts' comprehensive
        educational programs and was either provided no educational services or
        provided substandard educational services through alternative school or
        independent study.
29.     At no time did the student receive a notice of suspension a notice of any
        expulsion proceeding, nor did they ever receive any notice of the reason for
        which each was being indefinitely excluded from comprehensive school
30.     At no time were the students Plaintiffs provided with a proper hearing
        allowing Plaintiffs to address there involvement in the alleged incident, any
        opportunity to present evidence or the opportunity to contest the reasons for
        which each was being excluded from the comprehensive school program.
31.     At no time were the Plaintiffs invited to attend any meeting to discuss or
        created an Alternative Educational Plan. At no time did Plaintiffs receive a
        notice of any schedule meeting from the Districts' immediately after being
        excluded from comprehensive educational programs to substandard

educational services through alternative school or independent study program.

32.  At no time did the District provide Plaintiffs with an Alternative Educational Plan at the time each was being excluded from the comprehensive school program.

33.  District at no time provided the Plaintiffs with a hearing in the required time mandated or allowed regarding the Challenge to Student Temporary Record. District refused to appoint a Hearing Officer in the request of the Plaintiffs to challenge Student Plaintiffs Temporary record.

34.  The Student Plaintiffs Temporary Records are misleading disciplinary record does not indicate that the Student Plaintiffs has been excluded from the comprehensive educational program to an alternative educational program. The Plaintiffs record indicates that they transferred to another school district. At the time each Student Plaintiff was expelled by the Board of Education District 217.

35.  Plaintiffs received "Unofficial Transcript" in the mail. At no time did the Plaintiffs request the "Unofficial Transcript". Student Plaintiffs also received from the District an Illinois State Board of Education Student Transfer Form. The form was not dated and it was sign by the Districts' principal. Transcripts list no forwarded address or the name and signature of person sending the transcripts. The forms and documents in Student Plaintiffs' Temporary Record are misleading.

36.  Student Plaintiffs also has another Illinois State Board of Education State mandate "Student Transfer Form". The form indicates that the Student Plaintiffs were in "good standing" the form was dated and sign by the Districts' principal. The forms are inaccurate and misleading.

37.  Student Plaintiffs Temporary Record has no incident notes or incident reports on the alleged incident for which Plaintiffs were excluded from the comprehensive educational program. The Plaintiffs disciplinary record from the District regarding the alleged incident indicates that incidents notes or incident report would define the Plaintiffs alleged involvement in which it

states "see incident notes" "see incident report" "see hearing report" and no incident notes or incident reports are included in Student Plaintiffs Temporary Record.

38. Allegations of Deon Hughes. Student Plaintiff Deon Hughes was 11th grader during the 2006-2007 school years at Argo Community High School.

39. Deon has been a student enrolled in Argo Community High School since he began his High School Career.

40. Deon was expelled by Districts' 217 Board of Education at the regular board meeting on January 08, 2007 for allegedly being involved in the incident on December14, 2006 for one semester of school. At which the evidence provided at a hearing did not indicate Deon's involvement.

41. After a meeting at RISE Alternative School, the alternative school Deon was assigned to by the District. Student Plaintiffs mom contacted Dean. Rodriguez at Argo to inform him that the school did not accept Deon because he refused to admit to the wrong doing he was accused of and expelled by the board.

42. Dean. Rodriquez stated that there nothing else the Districts' could do.

43. Student Plaintiffs mom telephoned the Superintendent, Dr. Frank Stout and informed him that RISE refused to accept Deon because he had refused to admit to being involved in the incident the District had expelled him for. Dr. Stout stated that he would look into the matter over the weekend and he would get back to me.

44. Indiana University course are offered (2 courses) and summer school as needed at the District's expense Student Plaintiffs mom accepts and sign the documents as needed his education in Principal Dixey office.

45. May, 2007. Plaintiff telephoned Principal Dixey to inquire if Deon's mid-terms for the Indiana University coursework, had arrived at the district, and if I would sign the application for summer school or would the district sign the application since they were paying for the summer classes Deon would take.

46. Principal Dixey stated that the mid-terms had not arrived and that I could come to district before the summer program started and sign the application for the summer school program for Deon.

47.  Principal Dixey refuses to pay for the summer school for Deon, in retaliation for Student Plaintiff's mom, demand that the teacher be reprimand for choking Darien, Student Plaintiffs sister on May 23, 2007.

48.  June 01, 2007 Principal Black gives Ms. Weaver a letter regarding Deon being expelled, at the end of the expulsion hearing of Darien. June 04, 2007 Ms. Weaver telephone Principal Dixey to inquire about summer school, states he would not be paying for summer classes for Deon.

49.  June 05, 2007 Ms. Weaver informs Principal Dixey and Assistant Principal Dr. Black of her intentions of contacting the newspapers about their intimidation regarding Deon's summer school classes and their refusal to provide as Principal had agreed on in February 2007

50.  June 05, 2007 Ms. Weaver signed summer school application that was provided by Principal Dixey in the present of the Assistant Principal Dr. Black.

51.  The duration of Deon's attendance in summer school. Dean Burda telephoned every other day with threats, also constantly going to Deon's classes making threats showing signs of intimidation to him.

52.  On July 18, 2007 Deon is dropped for the summer school with 2 days left by Dean Burda. Dean Burda telephone Ms. Weaver indicating that Deon was allegedly involved in an incident in the school parking lot. Dean Burda had not given any other specific details regarding the alleged incident.

53.  Deon lost his credit he had earned as a result of Dean Burda action in dropping him from Argo's summer school program.

54.  On August 01, 2007, Ms. Weaver received a postcard from the post office indicating a letter from Argo Community High School that could be picked up the following day on August 02, 2007.

55.  Ms. Weaver ask Dean Burda to send something in writing home with Deon regarding the incident and his stance about the incident also informed Dean Burda I had not yet received any information from the board or district regarding Darien being expelled from school.

56.  Dean Burda informed me that he would send the information in the mail.

57. Deon at no time received any notice of any kind from Dean Burda regarding alleged incident on June 18, 2007.

58. August 02, 2007, received a certified document from Principal Dr. Black. The documents included a copy of Deon "Unofficial Transcript" and younger son records that had been forwarded to Argo Community High School form Wilkins Jr. High.

59. Principal Black signed a State Mandated Board of Education "Student Transfer Form". The form has no date indicates that Deon was "not" in good standing. Due to a suspension from August 15 thru August 24, 2007.Gave no specific details or indication of what the suspension was for. At no time has Argo Community High School given any notice of suspension, right to review or allowed a hearing regarding this suspension.

60. Deon's "Unofficial Transcript" does not give any indication of where, when and who the Transcript were forwarded. Transcripts issued were not enclosed in a sealed stamp separate envelope. The information states that on January 11, 2007 Deon withdraw from Argo Community High School because he moved Deon was expelled by District 217 board of education on January 08, 2007 at the regular board meeting.

61. On August 29, 2007 Deon and Ms. Weaver met Dean Little at Argo Community High School to register him into school.

62. We enter Dean Little office, Dean little informed Ms Weaver that according to Principal Black, Deon would have to attend Hillside Academy Alternative school for the alleged incident occurring on June 18, 2007. The same incident that he had been dropped from summer school, with two days remaining resulting in the lost of his credit for the class. Was issued a ten day suspension by Principal Black which came in the mail during summer vacation.

63. Dean Burda enters the room after being called by Dean Little. He informs Ms. Weaver that Deon has no other options, if he is to attend school he must attend through placement into alternative program.

64. Dean Burda and Ms.Weaver argue for at least fifteen minutes. At first Ms. Weaver refuses to accept the placement. Ms. Weaver believed that the Dean

was wrong and that he could not do that. Once, Ms. Weaver realized that the dean was not going to change his mind Ms Weaver signed the In-take forms that Dean little provided. The forms stated that Deon would remain in placement at the Hillside campus until January 2008 for one semester of regular education.

65.    After leaving Dean Little's office, Deon and Ms, Weaver went to Superintendent Stout office. Ms Weaver gave Dr. Stout the State Mandated Board Education "Student Transfer" form that Principal Black had mailed over the summer to me. He looked over the form, asked me what seem to be the problem.

66.    Inform Dr. Stout, Superintendent of District 217, that we were forced basically by Dean Burda to sign In-take Forms, that Deon had already been dropped from summer school by Dean Burda and suspended by Principal Black for 10 days by mail over summer vacation, without prior notice.

67.    Superintendent Stout said he would look in the matter. That once he had, he would notify me. Dr. Stout begins to try and persuade Deon to attend Hillside. Stating, to Deon he would enjoy attending the school. That it has a college campus feel with a castle like building. Superintendent Stout ignored Ms. Weaver request for a hearing, acting as if he never heard her.

68.    On August 30, 2007 Ms. Weaver submit a request to Principal Black for children Student Temporary Records, Principal Black refused to allow me to give my request to the school Registrar.

69.    On August31, 2007 received Deon's incomplete Student Temporary Record from Principal Black.

70.    September 2007 submitted another request for Deon and Darien's complete Student Temporary Records, again. Principal Black refuses to allow me to submit my request to the school Registrar. She accepts the request again.

71.    September 2007 I inform Superintendent Stout that Principal Black had given me incomplete copies of Deon and Darien's Student Temporary Record, also I allowed Dr. Stout to review the incomplete records Principal Black had given to me. Asked Super. Stout about the status of my request for the hearing. Dr.

Stout said he was still looking into the matter. Apologize for the records. Dr. Black will contact you when records are available.

72. Received incomplete Student Temporary Records from Principal Black September 06, 2007.

73. School starts at Hillside Academy September 04, 2007 Deon is not in attendance.

74. Principal Black refuses to provide transportation. Request and attends tour of (Chicago) Hillside Campus on my own after, Principal Black informs Ms Weaver that Argo is unable to obtain transportation for my children to attend the Hillside campus like the In-Take Forms state signed August 2007.

75. Deon starts school at Hillside Academy September 09, 2007.

76. Principal Black when contacted by Ms Weaver, stating that Dr. Stout requested that Deon had to attend (Chicago) Hillside Campus.

77. Contacted Superintendent Stout stated that he was not aware of the situation; thought Deon had been order to attend Hillside Campus.

78. Ms Weaver informed Superintendent Stout and Principal Black, that Deon feels threatened by staff and students. Does not feel that the curriculum he was taking was challenging him or preparing him for his tests, and that he had already taken the class at Argo. Also asked for the status of Deon's hearing regarding being placed at Hillside.

79. Deon is hospitalized October14, 2007.

80. Ms Weaver telephones Principal Black to inform the District that Deon, Darien or Brandon would not be in school was in the hospital, that I would call day to day because I did not know when they would be released.

81. Principal Black threatens to call the Department of Children and Family Services because I refuse to give her personal information concerning my children were hospitalized.

82. Principal Black informs Hillside Academy to drop Deon from attendance on October18, 2007.

83. Administrators from Argo and Hillside were made aware, having been inform by Ms Weaver that she did not wish to share any specifics surrounding why children were in the hospital.

84. Principal Black refuses to allow Deon admittance back into school after being release from the hospital on October23, 2007 with a medical release from the doctor.

85. Deon is allowed to return to school on October 26, 2007 Argo or Hillside offers no explanation given why he was not allowed to enter school on October 24,2007 after being released from the hospital on the 23rd .

86. On October 18, 2007 Ms.Weaver met with Dr Stout and Dr Black submitted a request to administrators, requesting a hearing to challenge the entries in the Deon's Temporary Record and to amend the inaccurate and misleading information.

87. Never received a hearing from Dr Stout regarding the challenge to records.

88. Received a letter from the superintendent November 01, 2007 regarding my request submitted October 18, 2007, that there will be no hearing.

89. Deon is physically assaulted at Hillside Academy by a staff member.

90. Hillside administrators resolve the issue by setting a meeting up which included Deon, Principal Jimelo, Program Director Ms Mutterer, and Sara Baum the school social worker. Ms Mutterer telephone to say that the issue had been resolved with the talk and Deon would not be punished.

91. Principal Black informs Ms Weaver that Deon would continue to remain at Hillside because of the incident occurring on December18, 2007, in which he was not being punished for at Hillside.

92. Ms Weaver refused continued placement at Hillside, instead requested a hearing, hearing schedule for January 07, 2008 this is the original day Deon was to return to Argo according to the In-take forms completed on August 29, 2007.

93. Argo cancels the hearing after they are contacted by Beth Cunningham of the Chicago Coalition for the Homeless, that she would also be attending the

hearing that is schedule she also request a complete copy of Deon's Temporary Record on December 21, 2007.

94. At the meeting on January 08, 2008 District's administrators Principal Black Dean Burda Dean Little and the school's Attorney Crumley submitted an Alternative Educational Plan dated January 07, 2008. (This is the first and only plan for Deon I had ever seen and he had been at Hillside since August with out an (AEP) or a meeting to discuss a plan.

95. At no time were we offered an opportunity to attend any meeting regarding an (AEP) for Deon.

96. District refuses to allow Deon to return to Argo as scheduled and he remained at Hillside for the remainder of the 2007-08 school years.

97. Deon did not take State required ACT/PSCT nor did ACHS or Hillside offer Deon any help with the preparation for testing or information regarding re-testing if he missed the mandatory day of testing. Deon does not have any test scores to date included in his record concerning ACT/PSCT or the district's has not extended an opportunity for him to take the test during the re-take test dates.

98. Deon did not participate in any of the senior's events, prom, pictures, final exams, trips, and dances nor did Argo invite Deon to do so.

99. Deon does not graduate at the end of the 2007-08 school years as he should not enough required credits but has more than enough credits.

100. Deon returns to Hillside Academy for the 2008-09 school, year without a hearing per request of Principal Black.

101. No prior notice from the District, informing me that Deon would remain placed at Hillside for the 2008-09 school years.

102. Deon takes the same 7 classes he took for the 2007-08 school year. Hillside does not offer the required classes for courses that Deon is in need of. Deon receives credit for only 3 of the 7 classes he was enrolled in at Hillside, because had already earned the required credits in the other 4 classes but was ordered to take anyway instead of the classes needed.

103. I request Deon's Student Temporary Record September 03, 2008 and received them on September 06, 2008, from the school Registrar Vickie McAlpine. Ms. Weaver made request after speaking with the new superintendent of District 217, Dr. Kevin O'mara. Dr. O'mara informed me that after reviewing Deon and Darien temporary records, he could not locate the request I submitted to Superintendent Stout. I asked Dr. O'mara if he could act on my request to challenge the records, because Superintendent Stout had not acted on the request.

104. Ms. Weaver submitted a request to Superintendent O'mara, October 02, 2008 to challenge the inaccuracy and misleading information in Deon's Student Temporary Record.

105. Ms. Weaver submits a request to have a Case Study Evaluation for Deon, October 08, 2008 to modify behavioral components. Deon was being physically abuse at Hillside by the Staff and the only explanations Hillside or Argo administrators would give is that it was proper procedure. Ms.Weaver never received from Hillside or Argo Community High School any outlined details of Hillside procedures, the use of, or what the procedures were. Deon came home a number of times red, swollen, bruised, and scratched from the procedure that was being administrated by Hillside Staff.

106. On October 4, 2008, Ms. Weaver received Illinois State Board of Education, Form 34-57A. No title was on this form. This form indicated that Deon was referred for an evaluation on October 08, 2008. A review of the referral has determined that an evaluation is not appropriate at this time. Currently there is not enough information to proceed with testing.

107. On October 10, 2008, Ms. Weaver received an overnight letter from Superintendent O'mara delivered by Fed-Ex. Pursuant to Ms Weaver request submitted October 02, 2008. Informing Ms. Weaver, of a scheduled preliminary hearing to address her concerns regarding Deon's Student Temporary Record. Meeting will be held on October 16, 2008 at 10a.m. at ACHS.

108. October 16, 2008, Superintendent O'mara cancelled the meeting due to me arriving at ACHS 11-18 minutes late. He also informed me that because of my tardiness, no hearing would take place, preliminary or formal. Superintendent O'mara refused to provide me with a written statement detailing or outlining this information. Superintendent O'mara advised me to leave the building in (2) minutes or he would call the Summit Police Department to have me escorted off school premises.

109. As of October 20, 2008, I have received no response from Superintendent Stout regarding him appointing a Hearing Officer for the hearing. I submitted to Superintendents O'mara's Secretary a request to appoint a Hearing Officer to challenge Deon's record.

110. October 22, 2008, Superintendent O'mara overnight a letter thru Fed-Ex. This letter informs me that Superintendent O'mara had scheduled another preliminary hearing, regarding my challenge on October 31, 2008.

111. On October 23, 2008 I received a post card from the Post-Office informing that I could retrieve a letter sent from ACHS on October 24, 2008. Pick-up the letter from the Post-Office. The letter was from Dr. O'mara, dated October 17, 2008 a day after the scheduled preliminary hearing, that he cancelled. Informing me to submit another written request to challenge Deon's Temporary Student records to his attention.

112. On

113. On Friday, October 31, 2008, preliminary hearing was held at ACHS in Superintendent O'mara office. At this meeting Superintendent O'mara was only present. He would not respond to my request to have Principal Black and Dean Burda present during meeting. Principal Black and Dean Burda are responsible for the information that I disagree with. Almost everything I asked concerning the inaccurate and misleading information I was told that the information was accurate or either we would not discuss. Superintendent O'mara ended the meeting stating he would inform me by mail of his decision. Again I asked Superintendent Stout to appoint a Hearing Officer, He suggested I await letter.

114. On November 4, 2008. A meeting was held at ACHS present at meeting was Principal Black, T. Clark, Director of Special Education, Dr. McCarthy and C. Johnson counselor all of ACHS. Principal Jimelo and Ms. Sara Baum Social Worker from Hillside Academy. The meeting was regarding my request for a Case Study Evaluation for Deon to have an AEP in place, to have a plan created or modify concerning Deon's behavioral components. We never received proper prior notice of this meeting. We were afforded the opportunity to attend this meeting.

115. On Saturday, November 8, 2007, I received a letter from Principal Black. The letter was dated November 05, 2008 and was to inform me of the meeting held November 04, 2008 to determine Deon's eligibility for the case study evaluation that I had requested on October 02, 2008. That standard protocol to have screening takes place in elementary/ and middle school, as identification at disabilities needs to take place early. The consideration of whether Deon has an emotional disability would include an examination of whether this condition had had an affect on his educational progress. The team decided against conducting a case study evaluation, after reviewing Deon's current academics and behavioral progress. The letter states that the Hillside Staff made note at the meeting that Deon's was currently on Level 2 of the behavior management system. He was on Level 4 until his physical management incidents that occurred on October 24 and October 30, 2008. The PPSSC Team determined an evaluation is not appropriate at this time due to Deon making educational progress.

116. On November 10, 2008. Ms Weaver submits to Principal Black her response to the letter received from Principal Black on Saturday. This letter was concerning the decision the PPSSC team made and my disagreement with it. The fact that I was not informed properly of this meeting prior to it taking place. That we were not invited to this meeting and that no one from the PPSSC had spoken directly to Deon or I regarding the evaluation at no time before, during or after I submitted my request for the evaluation. Or in making a determination regarding eon's eligibility regarding the evaluation.

117. Ms Weaver also submitted a request to Principal Black for information on obtaining/receiving an Independent Educational Evaluation. She disagreed with the PPSSC team decision not to conduct an evaluation. Mainly on the basis that no one asked or allowed my input or that no one ever spoke with Deon in making this determination.

118. Principal Black responds to Ms Weaver concerns about PPSSC determination and her request to have an Independent Educational Evaluation. The letter stated that the Illinois regulations regarding Special Education layout the circumstances as to when an independent evaluation is warranted. Deon's case does not meet criteria for this evaluation. That in terms of my second letter written today, meeting held on November 04, 2008 was held in response to your request to considering him for testing.

119. The team first met and determined that they needed additional information from Hillside. The second meeting reviewed Deon's test data and behavior reports from Hillside personnel. As per you last letter, as we discussed on the phone today. The PPSSC meeting found him to be making academic progress, which would not be the case if he were to be found eligible for an Emotional Disability. You continue to voice your concerns regarding Hillside's Physical Management System. If you decide that you do not want Deon to continue to attend Hillside due to their behavioral interventions, you may choose to withdraw him and enroll him elsewhere. We do not have any other options available at this point in time.

120. On November 10, 2008, Ms Weaver gave Superintendent O'mara a letter in response to the letter she received from Dr Stout dated November 07, 2008 regarding the preliminary and his finding. My letter is dated November 09, 2008. In this letter Ms Weaver asked if Dr O'Mara would appoint the hearing officer as Illinois State Board of Education regulations mandated him to do once no resolution was met at the either preliminary hearing on October16, and October31, 2008. At both preliminary hearings Ms Weaver requested that the Hearing Officer be appointed. She did not agree with the decision of Dr O'Mara regarding the inaccurate information or documents included in

Deon's Student Temporary Record (suspensions, dates, notes, and Illinois State Board of Education state mandated forms).Again Ms Weaver request that Dr O'Mara appoint a Hearing Officer. Dr O'Mara states in his letter to me that if I would like a hearing to submit to him another written request. Ms Weaver informs Dr Stout that she had no other plans on submitting another request for a hearing that she should receive from the initial request that was submitted October 02, 2008. Superintendent O'Mara I do believe that there is more than merely a delay in paperwork as you stated.

121. On November11, 2008 Ms Weaver a letter dated November 10, 2008 at 12:00p.m. At Argo Community High School.

122. The day of the Hearing present and participating in the hearing on behalf of the Districts was the Superintendent Dr O'Mara. According to the hearing report introduction, Argo staff states that Deon had a number of behavioral issues which precluded him from being success as a student at Argo. That Deon was dropped from the summer school program, that Ms Weaver was not pleased with Deon's placement at Hillside.

123. That the (ISBE) Student Transfer Form was inaccurate in stating Deon was in good standing. That the staff members intentionally completed the state mandated form incorrectly as a favor to me Ms Weaver

124. That the (ISBE) form dated July19, 2007 and completed by Principal was accurate, this form was completed one day after the alleged incident in which Deon was dropped from the summer school with two days remaining in the program by Dean Burda and lost the credit he had earned in the class. (This inaccurate and misleading and is one of my reason for the challenge).

125. States that Ms Weaver received another (ISBE) Student Transfer Form on August02, 2007 that indicated Deon was "not in good standing due to a suspension assigned from August 15 to August 24. The Hearing Officer's report does not indicate that this form is not dated but was signed by Principal Black. That there was no notice or report of suspension given to Deon no right to review and this form was sent certified mail to Ms Weaver. (This form is misleading and in violation of Deon's right, one of the reasons for Ms Weaver

challenge to records) and (Hearing report is inaccurate misleading and this was also a reason Ms Weaver wanted to appeal the decision of the Hearing Officer).

126. According to the Hearing Officer report; Deon's disciplinary record entry dated July18 stated "problem in the parking lot struck another student" the hearing officer states that he could not read the additional words. Ms Weaver informed hearing officer at the hearing that the word were "sent home" and that the words are readable Dean Burda was not present at the hearing he was the one who had informed me of this on July18th, that Deon would be sent home when Ms Weaver ask if she could or would be allowed to question him regarding the entry and the actions. Both Superintendent O'Mara and Hearing Officer Majka told Ms Weaver that Principal Black or Dean Burda did not need to be present, that Dr O'Mara would represent the district, concluding with a final note with this entry "drop summer school". Following page of Deon's disciplinary record has two entries. The first is a June 2007, entry indicating that Deon had been expelled the previous year the second entry was dated July18th the comment next to this date was "problem in parking lot , punch Vito, see incident report, ten day suspension-does not live in district transfer.

127. Dean Burda telephoned Ms Weaver on June18, 2007 informing her that Deon had been dropped from the summer school program because of an alleged incident in the parking lot of the school. Dean Burda gave no specific details regarding Deon's alleged involvement. Dean Burda provided Deon with no notice or written statement regarding being dropped or suspended. Nor did Dean Burda ever inform Ms Weaver that Deon would be suspended in the future or had been suspended for ten days on June18, 2007. There is no incident report or notes on the parking lot incident in Deon's record. Deon never transferred from Argo nor did Ms Weaver ever inform staff at the district of any transfer. (This is also a reason for my challenge to information in Student Plaintiffs Temporary Record it is misleading and inaccurate).

128. The S.T.A.R.S. Student Data Form contains no entries of disciplinary sanctions on any of the alleged incidents. Nor does it indicate any suspension given for the incidents.

129. The most significant issue presented by Ms Weaver was that her son was placed at Hillside Academy without due process. At the hearing Superintendent O'Mara stated that although Illinois School Code does require that a student receive some type of due process before being administratively place in an alternative educational setting. However, this was not what occurred in Deon's case. The staff wanted to place Deon at Hillside for his own benefit. He was not being successful at Argo and the staff felt that Hillside might better meet Deon's needs. That Ms Weaver agreed, that Ms Weaver accepted placement on August29, 2007. That there was no need for any type of due process in this situation. Superintendent O'Mara when asked by the hearing officer if Deon could be immediately enrolled in Argo if this is what the parent wanted and Dr O'Mara response was that Deon could be.

130. Two specific entries in Deon's school record were challenged at the informal hearing. The first addresses the disciplinary record which resulted form Deon's behavior which apparently occurred during summer school of July, 2007. "7/18 Problem in parking lot struck another student sent home-dropped (from) summer school. The second page includes 7/18 problem lot punched Vito see incident report 10 day suspension does not live in district –transfer. Entries say the same thing except for specific references to an incident report and ten day suspension. Neither the parent nor the school district provided a copy of the incident report or Notice of Suspension. It is unclear if a formal letter or Notice of suspension was ever issued considering the behavior occurred while student was attending summer school. It is unclear whether the parent /student had been informed of appeal rights or even if the parent had any appeal right considering the incident occurred during summer school rather than during the regular school year. In this case the Hearing Officer can only conclude that the student was guilty of some type of conduct which would warrant a suspension.

131.   Once that presumption is made, it is only reasonable to conclude that some type of notation would be made in the student's disciplinary record. As a result the Hearing Officer finds that the notation was accurate, in that the behavior occurred, relevant, because some notation of it had to be made and; proper, for the reason stated above.

132.   The second issue raised in the informal hearing was that no initial meeting was held with Hillside Academy to determine Deon's alternative educational plan. It is unclear as to whether any preliminary discussion was held regarding an educational plan for Deon while placed at Hillside Academy. That parent submitted three documents. Each of these documents is entitled Alternative Educational Plan and all reference Deon Hughes the student for which plan has been developed .First plan, is undated neither the parent nor the school district provided any further information regarding it. It could have been made when Deon entered in Hillside Academy Program or anytime there after. The second Plan is clearly dated Jan 7, 2008. The third plan is undated although it references the duration of the plan as being from January 07, 2008 to May20, 2008.

133.   The Hearing Officer's report is inaccurate and misleading my objection to the Alternative Educational Plan was not that it was dated Jan 2008 instead August 2007. My objection was that the plan the Hearing Officer list as SE #9 States or indicates the plan was originally developed January7, 2008 and was amended August25, 2008, When Deon was placed at Hillside or when we were first informed on August29, 2007 a plan should have been put in place. The hearing officer states in his report that student exhibit #9 is undated, neither the parent nor school district provided any further information regarding it. That it could have been made when Deon entered the Hillside Program or any time there after. This also misleading I submitted what the Hearing officer list as (Student Exhibit #10). This was a copy of an (AEP) that was given to me at a meeting held January07, 2008. This was the first and only time an (AEP) was given to me. We disagreed to the vague content in the (AEP), as well this was not a meeting to discuss the (AEP), it was because I

refused continued placement at Hillside. And there was no representation
from Hillside present at the meeting. I also submitted what the hearing officer
list as (student exhibit #11) to further prove this. The Hearing Officer
indicates in his report that the (AEP) is undated although it references the
duration of the plan as being from January07, 2008 to May20, 2008. The
Hearing Officer fails to state that this plan is an (AEP) Draft that was
submitted to the district to review as we did not agree with the plan that given
to me at meeting held January 07, 2008. He fails to indicate that the dates
January07, 2008 to May20, 2008 reference the elements of the plan are
designed to reach the goal of Deon graduating with his peers and receiving a
diploma from ACHS on May 20, 2008 as this draft states. No agreement was
reached. (Alternative educational plan are inaccurate misleading and a
violation of Deon's right and this is one of the reasons for Challenge to
records, the Hearing Officer's report is misleading and this was the reason for
the appeal to the Challenge of the records.

134.  The District can not address both plans one is accurate and one is inaccurate.
Both can not be accurate. The hearing officers states that the alternative
education plan (Student Exhibit # 9) is undated and, as a result no
determination can be made as to when it was developed. That no alternative
educational plan was as Deon entered the Hillside Academy program. That
this is clearly not a student records issue and, therefore, I must find the
parent's objection regarding this matter as not relevant to the criteria which
can be utilized to judge student record issues. In conclusion, the informal
Hearing resulted in finding that in the two areas of concerns where were
raised, there was no record keeping inaccuracy. The Hearing Officers concurs
with this conclusion.

135.  At the Formal Hearing the parent raised another major issue which was
addressed, in part, at the Informal Hearing. Ms Weaver indicated that she did
not accept placement. There are approximately six letters to school staff from
the parent. (Exhibits submitted by parent) which raise a number of issues.
Some have been addressed in this report and others challenge the decision

made by the School District regarding Deon's eligibility for a Special Education Evaluation. Clearly, the special education issues are outside the scope of this hearing although they may be appeal able in another forum.

136.    The issues surrounding Deon's suspension and the development of an alternative educational plan have also been addressed. However, one letter from the parent to Dr O'Mara which raises several specific issues. At the top of this handwritten letter is the date, October02, 2008. The specific issues raised on the letter include the following. No entries of expulsion or administrative transfer. No information entry by any administrator or teacher to the disciplinary file dated or signed attesting to administrative transfer or expulsion. To challenge the documents and the information not present or present on Temporary Record. Who expelled Deon and what authority (?). Certificate of good standing: dates and what (do they) mean (?). Student Transfer signature, dated, information. S.T.A.R.S. Data report (discipline). AEP information. School referrals. Placement.

137.    The parent is correct on the point of no entries of expulsion or administrative transfer. However, the reason is that the student was not expelled or administratively transferred to Hillside Academy Alternative Educational Program. The parent agreed to placement.

138.    No information entered by an administrator or teacher to (the) disciplinary file dated or signed attesting to administrative transfer or expulsion. There was no administrative transfer or expulsion so there would be no such notation in the disciplinary file.

139.    The Challenge to information and documents not present and present in (the) Temporary Record does not appear to be relative to any particular substantive issues.

140.    Who expelled Deon and with what authority is not relevant because no expulsion took place.

141.    Certificate of good standing dates and what it means has been addressed in this report. That when the District believed that Deon was transferring out of the district, it issued a form, perhaps erroneously, that indicated that Deon was

a student " in good standing". When Deon did not transfer, the form was re-
issued to reflect that Deon was "not" in good standing Although, the district's
motives were good, the first "in good standing " form should be removed from
this file.

142.    Student transfer signature and dates, information appears to be clear parent
and student both signed the placement form. (this form is misleading and
inaccurate and was also the reason Ms Weaver challenged the records the
forms requires no signature of Deon or Ms Weaver neither is Deon or Ms
Weaver signature on the form, the Hearing Officer's report is misleading, the
transfer form and placement forms are two different forms. The transfer form
indicated that Deon transferred out of the district January11, 2007 that he
moved to Chicago. It also had the signature where it required a Deans'
signature. Deon was expelled by the District's Board of Education on January
08, 2007).

143.    S.T.A.R.S. data report (discipline) there is nothing here which can be
addressed or resolved in a student records hearing. If the forms exist, it should
be included in the students file. For whatever the reason, it does not seem to
exist although a handwritten discipline record was maintained to the student.
This is also misleading. I discipline record was maintained to the student.(this
form was also the a reason for the challenge to the Temporary Record, the
Hearing Officer's report is also misleading Ms Weaver gave the hearing
officer a computer generated copy of Darien's S.T.A.R.S. report to further
prove that the form exist after Superintendent Dr O'Mara that it did not).

144.    The Alternative Educational Plan has been previously reviewed and appears to
be in order. The school referrals items do not appear to relate to any
information presented at the Hearing.

145.    As previously indicated the placement issue appears to have been resolved.
Deon was neither administratively transferred nor expelled. He was placed at
Hillside Academy with parental permission.

146.    The Hearing Officers find and believes that there are seven distinct areas
which where raised by the parent, at the hearing either directly or through the

documents provided. Some areas are clearly outside the scope of a student records hearing. The areas raised that are within the scope of a student records hearing will be addressed in terms of their accuracy relevance and propriety.

147. The Original Suspension (July 2007). There is some confusion surrounding whether the suspension was for the three days, the finals days of the summer program or for the ten days as indicated in Student Exhibit # 2. This exhibit clearly indicates that the suspension assigned was for ten days. It is dated July18, 2007. There is no question the parent believed that the suspension assigned was for the three remaining days of summer school. However the document provided by the district to the parent does not support this conclusion. This document is accurate relevant and appropriate and should remain as part of the student's record.

148. Student Transfer Form July19, 2007. This form indicates that Deon was in good standing at the time it was issued. However, the form was issued while Deon was serving an out of school suspension. The form is not accurate and should be modified to indicate that Deon was not a student in good standing or should be removed from the student's school record file.

149. Student Transfer Form August02, 2007. This form indicates that Deon was "not a student in good standing" Deon was serving an out of school suspension. The form is accurate relevant and appropriate and should remain as part of the student's record file.

150. Disciplinary Record Student Exhibit # 4 consists of two pages which both reflect essentially the same information- Deon had some type of disciplinary problem with another student. The notations on the form are handwritten. The form is accurate, relevant and appropriate and should remain as part of the student's record.

151. STARS Student Data (Student Exhibit #5) contains demographic information about the student as well as some handwritten notations of disciplinary problems. There is no notation regarding the incident which occurred in July 2007, which resulted in the ten-day suspension. This form is not accurate and should be modified to indicate the disciplinary problem in which Deon was

involved as well as the consequence which was assigned, a ten-day out of school suspension.

152.    Hillside Academy – Consent for placement. District Exhibit #2 is signed by both the parent and student. The signatures indicate an acceptance of the student's placement at Hillside Academy. The assertion that due process documents are missing for the student's record is inaccurate. Because of the parent's agreement, no due process was required. This form is accurate, relevant and appropriate and should remain as part of the student's record.

153.    Alternative Educational Plan- The parent asserts that no alternative educational plan was developed as her soon entered the Hillside program. There is no specific evidence to contradict this assertion, however, if this is an omission on the part of Hillside Academy nothing can be done to correct it at this point. However, Student Exhibits #9, 10 and 11 are all entitled Alternative Educational and seem to comprehensively address the student's needs and how they will be met in the Hillside Academy Program. The Alternative Educational Plans provided at the Hearing appear to be accurate, relevant and appropriate and should remain as part of the students records.

154.    The Hearing Officer concludes the greater issue of missing records for due process as a result of Deon being administratively transferred or expelled is not credible. That Deon was placed at Hillside Academy with parent permission and, as a result, no further due process records or hearing would have been required. It appears that parent may have misunderstood that she was actually providing permission. That it is possible parent believed she had no other choice because her son was being transferred to Hillside Academy or expelled. This was not the case. The Hearing Officer clearly stated at the Hearing that the parent could have revoked her permission for her son to be placed Hillside Academy at any time. He would have then been returned to his home school, Argo, unless the staff wanted to take the proper steps to administratively transfer Deon. If this were to occur, due process would, of course, have to be provided.

155. Hearing Officer notes that a court reporter was present at the Hearing and the Hearing Officer himself made a digital recording of the Hearing to assist him in writing his report. The parent has requested a copy of the digital recording and Hearing Officer has agreed to provide one.

156. As indicated in Administrative Code the parent has a right to appeal the decision of the local hearing officer to Regional Superintendent within 20 school days after such decision is transmitted. The parent shall inform the school and within ten school days the school shall forward a transcript of the hearing, a copy of the record entry in question and any other pertinent material to the Regional Superintendent. Upon receipt of such documents, the Regional Superintendent shall examine the documents and record to determine whether the school district's proposed action in regard to the student's record is in compliance with this Act and make findings and issue a written decision to the parents and the school within twenty school days of the receipt of the appeal documents. Dated December 01, 2008 sign Richard Majka, Hearing Officer.

157. Ms Weaver telephone Principal Black December19, 2008. To inquire of the procedure needed to be taken to enroll Deon back in attendance at Argo. Ms Weaver had been trying to reach both Dr O'Mara and Dr Black for two weeks following the hearing on the 18th of November. Ms Weaver decided to leave a voice message for Dr Black indicating that Superintendent O'Mara stated at the hearing on November 18, 2008. That she could withdraw Deon from Hillside, and that there was no specific duration on how long he had to attend Hillside, we were not informed that Deon would be placed at Hillside for the 2008-09 school years.

158. Principal Black response by letter dated December19, 2008. In the letter she states that she received Ms Weaver telephone call and found it necessary to inform her of the law in terms of communicating educational matters with her about her son. Since Deon has reached the age of majority (18) we will not be involving you in decision regarding his educational programming. Neither Argo nor Hillside is allowed to share information with you, though, or involve you in decisions regarding Deon's educational program. Of, course, if chose

to share information with you that is up to him. Ms Weaver would also like to remind you that we jointly established behavioral and academic expectations for Deon since he has not met those, returning is not an option. Once he completes all assignments of the BYU courses he will earn his diploma. Signed Principal Black. She indicates that Deon received a copy of this letter, he did not. This is the only information I ever received regarding Deon being of the age of majority and this letter is dated December19, 2008. Deon became of the age of majority before the 2008-09 school years begin. He was of the majority when Ms Weaver registered Deon on August25, 2008 and when Ms Weaver request, his records on September03, 2008 requested a hearing to challenge on October02, 2008. Ms Weaver received two scheduled informal hearings October 16 and October 31, 2008 and the formal hearing November18, 2008.

159.  On January05, 2009. The first day of school after Christmas break and the beginning of a new semester at Argo Community High School. Ms Weaver went the Superintendent to enroll Deon back into Argo Community High School as he indicated she could do if she wishes, during the Hearing on November18, 2008. Also, to submit a request for an appeal regarding the Hearing Officer's decision or findings of the Challenge to Deon's Temporary Records. Dr O'Mara told her that he was not aware of the procedure and perhaps she could deliver the request herself to the Regional Office if she could locate it. Then instructed her to leave before he called the police and have her escorted off the property. Ms Weaver tried to submit a letter dated December19, 2008 to the Superintendent; he refused to accept the letter. Again Ms. Weaver was told to leave the building. This letter is dated January05, 2009 and it is signed by Deon and Ms Weaver.

160.  Ms Weaver took Deon to Argo Community High School January06, 2009. Deon is there to enroll back into school as Superintendent O'Mara indicated he would be able to. Deon is not allowed to enroll himself into school. Deon is instructed to return home and wait for a call from Dr. O'mara until he talks with hillside. Deon asked the superintendent O'Mara if he would supply him

with something in writing stating why he wasn't being allowed to attend school. Dr O'Mara refused to do so. Deon gave Dr O'Mara a letter signed by him and dated January06, 2009. Given notice to the Superintendent and the District that although he was 18 years of age. Deon did not feel that he was able to conduct his personal business without his mother Ms Weaver assistance. That he was giving Argo Community High School the permission to speak with his mother concerning his affairs, including but not limited to enrollment, grades, discipline, field trips, etc.

161. Dr O'Mara told Deon and Ms Weaver that he still would not discuss any matters concerning Deon with his mom and refused to do so.

162. Dr O'Mara telephoned the Summit police and had Deon and Ms Weaver escorted out of the school and off the property.

163. Ms Weaver and Deon went to Regional office, we met with Dr Roberts. Ms Weaver informed Dr Roberts of what had just taken place at the school. Ms Weaver requested an appeal regarding the Challenge. Dr Roberts informs Ms Weaver that she will contact the district and set a meeting and will inform me of the date, time and place.

164. At the meeting District states that it is out of the question under no circumstances can Deon return to Argo Community High School. Present at this meeting was Superintendent O'Mara, Principal Black, Dean Burda, and Dana Crumley District's attorney. Regional Deputy Superintendent Dr Roberts, Deon, Beth Cunningham. District's provides no specific reason(s), details(s), statements on why Deon is not allowed to return to Argo Community High School after being placed at Hillside by Argo, with a hearing or properly cause.

165. Ms Weaver and Deon telephoned a number of times in January regarding when Deon would start school. Dr O'Mara told Ms Weaver that he would not communicate any information with me. Deon was also told that no decision has been made at the time and that he would contact him when he had.

166. Deon was ordered back to attendance at Hillside by Argo to complete the semester. No notice was given prior to this decision verbally or formally regarding the district's decision to extend placement.

167. Ms Weaver received a letter from Principal Black dated April02, 2009. This was given to Brandon with a check from Argo for transportation. This was never given to Deon. The envelope had an Argo Community High School stamp address in left upper corner but no other indication of who the envelope was and what it was. When Ms Weaver opened the letter it read. Dear Deon you have miss tutoring sessions Feburay10, 24, and March03, 17, and 31, 2009. You are should be working independently on your three classes and use her assistance when you have questions or problems with assignments. Remember that you will be given your diplomas after the three classes are completed and passing grades are posted to your transcript. I talked with mother today and asked her to communicate with you our concerns. If you miss two more sessions we will no longer offer tutoring assistance. Please schedule your other appointments around the tutoring sessions in the future. Copies of the letter were sent to S. Earnest, T. Clark, C. Johnson, and D. Fattorre-Crumley.

168. Received a letter dated April22, 2009 form Principal Black this letter was address to Deon Hughes. Stating that she had sent a letter to Deon on April02, 2009 informing him that he had missed a tutoring sessions and that if you missed two more we would discontinue the sessions. Ms. Earnest has once again communicated to me that you missed two more sessions of tutoring. The latest absence now results in the tutoring being discontinued. Once the classes are finished you would be eligible to receive your diploma from Argo Community High School. Copies of this letter were sent to S. Earnest, T. Clark, C. Johnson and D. Fattore-Crumley.

169. Principal Black did not provide transportation for Deon timely or accurately, the District agreed to pay for transportation for Deon so that he could attend tutoring. Ms Weaver told Principal Black this each time she spoke with her

and Deon or Ms Weaver could not obtain transportation fees unless Principal Black approved the request.

170. Argo Community High School or Hillside Academy has not sent anything to date anything about Deon's attendance during the first semester of school for 2008-09.

Allegations of Darien Weaver

171. On May 23, 2007. Darien was choked by a teacher at Argo Community High School. Darien was on the school bus waiting for the bus to depart. It was the last day of school. Darien informed the head administrators of the district what had happen to her when they boarded the school bus. Superintendent Stout, Principal Dixey, and Dean Burda. Each Administrator at different times stated that Darien had told them that she had been choked by a teacher. At no time did any of the administrators, according to Darien, question her or take a statement from her. Nor did any administrators question her or take a statement regarding any misconduct on Darien's behalf on the bus or at the school once she returns back to the school shortly after the incident.

172. Darien returned to the school that day with a neighbor. The neighbor asked Principal Dixey and Dean Burda to do something about Darien being choked. The administrators refused to speak with our neighbor because she was not Darien's parent. Principal Dixey and Dean Burda refuse to speak with Darien as well. While at Argo at no time did Principal Dixey or Dean Burda speak with or question Darien about any inappropriate behavior on the bus towards any staff member.

173. At no time on May 23, 2007, did any teacher or administrators contact me to inform me that Darien had reported to the administrators of Argo; Principal Dixey, Dean Burda, and Superintendent Stout, that she had been choked by a teacher on the bus. At no time on May 23, 2007 did anyone from Argo contact me and inform me of any inappropriate behavior or misconduct of Darien's

towards any staff member on the bus part. No one from Argo return any of my calls concerning Darien being choked by a teacher on May23, 2007

174. May24, 2007. Dean Little called to inform Ms Weaver that Darien was being recommended for expulsion, for profanity towards a staff member. Dean Little gave no specific details regarding Darien's behavior. Dr Little refused to give the teachers name or the circumstances surrounding or leading up to the alleged incident. Dean Little did not give or have any information regarding the teacher choking Darien. Dr Little stated she was unaware of the specifics as she was calling on behalf of Principal Black.

175. May24, 2007. Dean Burda also telephoned Ms Weaver to inform her of the expulsion hearing on June01, 2007. Dean Burda stated that Darien was being expelled for the use of profanity. Dean Burda offered no information about the teacher choking Darien. Until Ms Weaver asked, why no one contacted me about the teacher choking Darien and why nothing was being done about it. Dean Burda stated that Darien did tell him that she had been choked but, his main concern was getting the bus to depart from the school. That Darien was upset and that he had tried to calm her down. Ms Weaver requested a meeting to speak with the teacher(s) involved, to see statements form the teachers alleging Darien's involvement.

176. May23, 2007. Ms Weaver went to Argo and met with Dean Burda, Dean Little and Dean Rodriquez. At no time during the meeting did any of the administrators present or produce any documents or statements to me from the accusing teacher(s). The accusing teachers were not present at the meeting. Dean Burda insisted that she sign a form stating that she accepts the Hearing Notice regarding the expulsion. Ms Weaver refused. Dean Burda when asked by Ms Weaver What if Darien had been raped? What if had been your daughter? Would you have responded differently? Dean Burda stated that it would have been different as Ms Weaver was asking him to answer from the stance of a parent and not teacher view. Dean Burda stated that Darien was not credible and he did not believe her. Ms Weaver asked how that conclusion was reached. He did not respond. Because the Deans had not shown her

anything or allowed her to speak with the accusing teachers or given her any specific details about Darien's alleged misconduct only that she used profanity, Ms Weaver refused to accept the letter.

177. Ms Weaver telephone Dr Stout to inform him of the allegations by the Deans. That they were attempting to expel Darien for alleging using profanity. That no one from the school contacted or spoke with Darien or Ms Weaver on the 23rd of May to inform us of the alleged misconduct. That she had met with the Deans and they had not provided any specifics details or allowed me to meet or speak with the accusing teacher(s). Nor did they provide a written statement or any evidence of Darien's alleged misconduct. Ms Weaver also informed Dr Stout that no one from the district called her to inform her that Darien had been choked by a teacher on the school bus May23, 2007. Also informing the superintendent that Darien told her, that she had told Dean Burda, Principal Dixey and him as well. Dr Stout apologizes to Ms Weaver stating that he did recall a young lady telling him that she had been choked by a teacher, when he himself boarded the bus. Stating that his concern at the time was to get the bus departed. Dr Stout offered to arrange a meeting and he asked if Ms Weaver had a problem with meeting with Principal Dixey. Ms Weaver asked what was going to be done about the teacher behavior and Dr Stout stated that they would take care of it.

178. May28, 2007. Principal Black telephoned to schedule a meeting. Ms Weaver asked what would be discussed at the meeting and who would be in attendance. Principal Black sail that the meeting would be to discuss Darien's behavior on the bus, and Principal Dixey, Dean Rodriquez and herself would be present. Will Darien be attending the meeting? Dr Black asked. Ms Weaver asks if the accusing and or the assaulting teacher(s) would be present. Dr Black said that they would not. Ms Weaver replied that Darien would not be present either then. Ms Weaver replied that she thought the meeting was to address the issue of Darien being choked by the teacher. We will do so Dr Black replied.

179. May30, 2007. Ms Weaver met with Principal Dixey, Assistant Principal Black and Dean Rodriquez at Argo. At this meeting they provided no specific details about Darien's alleged misconduct. They provided no statements that stated Darien used any profanity. Dr Black stated that the teacher that choked Darien had been reprimanded for his actions. When asked how she refused to say stating that she was not allowed giving that information to me. Again Ms Weaver asks for the name of the teacher Dr Black refused that information as well. Ms Weaver did not believe that because Darien had not spoken with anyone since the incident and that day she only stated that a teacher had choked her, informing everyone that she had spoke with that she did know the teachers name only how he look. The district at no time asked Darien any specific details surrounding the bus incident, even when she returned back to the school after the incident. Principal Dixey apologizes to Ms Weaver stating that Darien did inform him that she had been choked. Principal Dixey stated that he boarded the bus after Dean Burda to try and calm the children down. Darien was hysterical and looked to have been involved in a fight. I tried to calm her down the best that he stated. Principal Dixey stated that his focus was to get the bus to depart. Dean Rodriquez asked if Ms Weaver would sign this written memo he created stating that she would accept the hearing notice. At no time did the district provide a notice of suspension aright to review or a written statement detailing what Darien's specific misconduct was on May23, 2007.Not once during the meeting did the administrators state that Darien had physically assaulted a teacher or attempted to assaulted teacher.

180. June01, 2007. Darien's expulsion hearing. When Ms Weaver and Darien arrived at Argo, we were instructed by the security guard to wait at the door she also asked for my identification to make a copy of. Why? Ms Weaver asked. You all have never requested to copy it before. The security informed Ms Weaver that she was instructed to make a copy of mines. Dean Rodriguez then came down the hall and led them into a small office located in the west office of the school. The dean advised Ms Weaver that things did not look for Darien and he recommend that we did not proceed with the hearing. Ms

Weaver stated that at this point no from the district has heard Darien's side of the story concerning the allegations so how would you know how this looks for her. Ms Weaver informs the dean that they would precede wit the hearing. Dean Rodriquez responds o.k. I tried to warn you but he refused to give her any specifics about his concerns. He then leads them upstairs to a class across from where the hearing would take place. Dean Rodriguez leaves and enters the room where the hearing is to be held. Inside the room Principal Dixey, Assistant Principal Black, Dean Burda, Dean Little, the district's attorney Crumley and the Hearing Officer Mr. Majka. Dean Rodriguez returns after fifteen minutes and escorts them across the hall to the hearing.

181. According to the Hearing Officer statement Darien is now being charged with physically assaulting a teacher on May23, 2007 instead of profanity. Since the 24th of May Ms Weaver had been in contact with all the administrators of district 217 and no time did anyone inform her that Darien had allegedly physically assaulted a teacher. Ms Weaver had met with the administrators on the 25th and 30th of May. The district never provided Ms Weaver any written notice or statement indicating that Darien was being accused or had allegedly assaulted a teacher. Nor does the notice informing her of the hearing or the notice from the Hearing Officer indicate that Darien had physically assaulted anyone.

182. Witness that the district present on their behalf at the hearing, statements were contradicting. Ted Stec stated that Darien assaulted him but did not feel at the time of the incident that it was necessary to remove her from the bus. Stating that he was not aware of who Darien was until he received a telephone call from Dean Burda instructing him to meet him at the Summit Police station. Mr. Stec said that he arrived at the station at approximately 4p.m. and was met by Dean Burda with the school's yearbook. Stating that he identified Darien in the yearbook as the young lady on the bus. The problem with that statement is that Darien was not one of the students that were removed from the school bus, she was not taken to the police station and Darien was not in the

yearbook. She attended the TARE program (night school) for the first semester when the pictures where being taken for the yearbook.

183. Mike Cognetti also a witness for the district. This is who Darien identifies as the teacher that choked her when he enters the room. Mr. Cognetti does not at anytime say that Darien physically assaulted Mr. Stec or him on the bus. He also says that he could not recall if Darien had used any profanity as all because it was very chaotic on the bus it was loud and everyone was yelling.

184. The attorney for the district told Ms Weaver that Darien being choked by a teacher is not an issue that should be discussed at the hearing regarding Darien's misconduct, that it is an administration issue and should be handle at administration level. Ms Weaver informed the attorney that the administration told her that this is where she would be able to address her concerns.

185. Monday, June04, 2007. Ms Weaver telephoned Principal Dixey to request a meeting concerning the teacher choking Darien. The principal stated that the matter was closed, that it had been discus at the hearing and if I anymore concerns I can express them at the Board meeting on June11, 2007 you can use that time to vent. Ms Weaver asked the principal for a Grievance Form. According to the District's handbook page 27, Darien could file a grievance against a staff member. Principal Dixey told Ms Weaver that the district had no such form. Ms Weaver asked again referencing the handbook and again Mr. Dixey stated that the form did not exist.

186. June04, 2007 the Hearing Officer's report was hand delivered to Ms Weaver's mother house by the security guard from Argo Community High School.

187. June05, 2007. Ms Weaver tries to contact Principal Dixey and Ass. Principal Black after reading the Hearing Officer's report. Darien does not have a statement included in the written summary of the hearing report. The questions that Ms Weaver ask during the cross examination of the district's witnesses are not included in the report or the questions that Ms Weaver asked Darien during the hearing.

188. Principal Dixey and Dr Black returned Ms Weaver telephone call. Both the district and Ms Weaver recorded the conversation (there is a transcript of the

conversation). During the conversation Principal Dixey acknowledges that when he boarded the bus Darien did inform him that she had been choked by a teacher before any accusations where made of her alleged misconduct towards any staff. That Ms Weaver was trying to work with the district on a number of occasions. That no one ever informed us prior to the hearing on June01, 2007 of any alleged physical misconduct to any staff member. That the districts provide no statement about Darien's alleged misconduct. That the hearing report was inaccurate and misleading. Ms Weaver wanted to know why no one at the district was taking her serious. Principal Dixey during the conversation stated that he would work with Ms Weaver and then ask what he could do. Again Ms Weaver asked for the grievance form that she had requested the day before. Principal Dixey agrees to give Ms Weaver the grievance form after she informs him that she was going to contact the media about the teacher choking Darien and districts refusal to act and these false allegations about Darien's conduct.

189.   Principal Dixey  acknowledges during the conversation that Ms Weaver had requested to speak with the assaulting and accusing teacher prior to the hearing and was not allowed to speak with them until the day of the hearing June01, 2007. Also confirmed during the conversation, that although he had informed Ms Weaver that her concerns about the teacher choking Darien would be address at the hearing on June01, 2007. The district had no intentions of mentioning at the hearing. That he was not aware of when and how the administrators identified Darien as the young lady that allegedly assaulted the teacher(s). Principal Dixey stated that Dean Burda had that information and that he would have to get back to me with that information once he spoke with the dean. Principal Dixey never responded to Ms Weaver and to date no one from the district has never given me that information.

190.   June05, 2007. Ms Weaver went to Argo and she met with Principal Dixey and Assistant Principal Black. The Grievance Form was given to me. I requested that they signed a release so that the media could to speak with the district concerning their refusal to address the teacher choking Darien, their refusal to

reprimand the teacher and the facts surrounding an expulsion hearing base on the use of profanity. Principal Dixey and Principal Black refused to sign the release. Ms Weaver requested that the district supply a copy of the audio recording of the hearing. Principal Dixey stated that he would contact the officer and notify me when he received a response from the hearing officer.

191.  June07, 2007. Ms Weaver submitted Darien's completed grievance form to Principal Dixey, asked him how long it would be before he would contact them concerning the grievance form. It will take a few days he states. Ms Weaver asked the status of him obtaining the audio from the hearing officer. Principal Dixey informs Ms Weaver that he was unable to obtain the recording.

192.  June11, 2007. Board meeting to determine if Darien would be expelled for the use of profanity towards staff member. At the meeting Ms Weaver is informed that the expulsion hearing was because Darien physically assaulted a staff member. Ms Weaver informed the Board that they were not properly informed of the charges that the hearing was held. At no time did anyone from the district provide any written statement or notice of specific charges that she was expelled for. That no administrator spoke with or question Darien regarding her alleged conduct prior to the hearing notice being printed, prior to receiving or being notified of a scheduled hearing. Ms Weaver also informed the Board that the hearing officer's written summary of evidence report did not contain Darien's statement or testimony. That the report was inaccurate and misleading. That Darien had informed all head administrators of Argo, on May23, 2007 she had been choked by a teacher. Nothing has been done about it. Ms Weaver informed the board that she had been told by the Principals the issue would be address first at the Darien's expulsion hearing and then at the board meeting. The Board just sat and listen they never responded to anything Ms Weaver said.

193.  On June11, 2007 District 217 Board of Education expelled Darien for two school years. After the board meeting was over Ms Weaver spoke with Principal Dixey with Principal Black present. She asked him for a copy of

Darien's disciplinary records or file. Ms Weaver was told that she would have to go to the Bridgeview County Building to receive a copy of her record. Ms Weaver asks for why that would be necessary, that her children were not wards of the state. Ms Weaver asked if she had any other options concerning the Board's decision to expel Darien for two years. Principal Dixey stated that there was not. Ms Weaver also asked the principal to provide something in writing indicating the board's decision. Mr. Dixey informed her that she would receive something in the mail in a few days.

194. July18, 2007 Dean Burda telephone Ms Weaver to discuss the matter concerning Deon. During the conversation Ms Weaver informed the Dean that she still had not received anything from the district regarding the board's decision to expel Darien on June 11, 2007. Dean Burda said that he would send it in the mail. Ms Weaver never received anything in the mail at no time regarding the expulsion of Darien

195. June14, 2007, Ms Weaver telephone Dr Black to inquire of the status of the Grievance Form that was submitted June07, 2007. Ms Weaver also wanted to know if they were going to address my concerns about the teacher choking my daughter. Principal Black stated that because the board acted on expelling Darien that they would not be following up on the grievance form or any dispute Ms Weaver might have.

196. August02, 2007. Ms Weaver retrieved a large envelope from the post office. The envelope was sent certified mail from Argo. The envelope contained Darien's "Unofficial Transcript", Student Transfer Form "state mandated" Student Withdrawal Form. Darien's transcript was not sealed or stamped "student transcript void if open". The transcript gives no indication of whom and where the transcript should be forwarded. It only indicates that Darien transferred to Argo from Wilkins Jr. High. Darien Student Withdrawal form states that on August15, 2007 she transferred that she did not enter. There is no indication on this form that Darien's was expelled by the Board on June11, 2007. There is a place on the form that could be completed, indicating the student was expelled, yet it was not checked. This form also list Gaby Wagner

the attendance lady at Argo, as the Dean and she sign the form where it requires the dean to do so. The Illinois State Board of Education state mandated "Student Transfer Form", sign by Principal Black but, is not dated. States that Darien was "not" in good standing yet gives no dates or indication of when this sanction begins and how long it will last. The form gives no dates. Ms Weaver at no time requested the transcript of her children verbally, in writing or in person from any administrators of Argo. The envelope did not include any information that Ms Weaver requested regarding the decision of the Board to expel Darien on June11, 2007.

197. Ms Weaver located the Hearing Officer information in the telephone book. Ms Weaver contacted Mr. Majka to ask what where the procedure for obtaining an audio copy of Darien's expulsion hearing. Mr. Majka informed Ms Weaver that on June05, 2007 Principal Dixey telephoned him and informed him that I had requested a copy. Mr. Majka informed Ms Weaver that he did send Principal Dixey two copies of the audio. One for the district. That he followed up by contacting Principal Dixey secretary to confirm that he had received them on June07, 2007

198. On August 29, 2007, Ms Weaver went to Argo to enroll Darien into school. We had not received anything from Argo informing us of what to do or what school to go to. We met in Dean Little's office. Darien and Ms Weaver sign some In-take forms. Ms Weaver asked Dean Little for copies of these forms. She said that Hillside Academy would give me copies when Darien begins school. Darien would attend 1semester of Regular Education at Hillside Academy according to the forms. Dean little said someone would contact me about transportation arrangements. Darien was instructed to go and take her I.d. picture. Told that she would get her schedule for the next semester when she returns in January of 2008.

199. On August 30, 2007, Ms Weaver submitted a request for her children Student Temporary Record to the school registrar Vicki McAlpine. Principal Black informs me that she will take care of the request. This was the last day that Ms Weaver was allowed to enter the building without the security informing the

Principal that I was in the building and where I was going, Ms Weaver was directed to the principal office from this point to get permission from Principal Black. This never happen during the time my oldest daughter attended Argo.

200. On August 31, 2007, Ms Weaver received a telephone call from Principal Black informing her that the Temporary Records were available for pick-up. Ms Weaver retrieved Darien's Temporary Record from Dr. Black that afternoon. Dr Black refused to go over the documents enclosed in Darien's record. She refused to answer any of my questions. After Ms Weaver reviewed the temporary records that night, she found it to be incomplete and misleading. Darien's record did include a copy of the hearing report. There were no incident notes or reports for the incident that Darien was expelled for on June 11, 2007. Nothing in Darien record indicated that she had allegedly physically assaulted a staff member. That Darien told administrators that she had been choked on May 23, 2007, by a teacher on the bus during the removal of some disruptive children.

201. On September 04, 2007. Again Ms Weaver tried to submit a request for Darien's complete Student Temporary Record to the School Registrar and was directed to Principal Black. I gave Dr Black the request and told her that I specifically wanted information regarding disciplinary matters. Principal Black accepted the request again.

202. Ms Weaver leaves Principal Black's office and Principal Black follows her into the Superintendent's office. Ms Weaver tells Dr. Stout that she had requested her children's Temporary record and had received an incomplete copy. Ms Weaver gave Dr Stout the incomplete record or files that Principal Black had given her on August 31, 2007. Superintendent Stout apologizes and states that they will get her the complete record and will call when the records are ready. Principal Black offers no explanation for her actions. Superintendent Stout does not ask for an explanation from her.

203. On September 06, 2007, Principal Black telephones me to inform are that the records are ready for pick-up. They are also inaccurate, incomplete and misleading. I asked Principal Black to interpret to me or explain the contents

of Darien's record and she refused again. I asked if she could have someone else do it, Dr. Black also refused. The Record included a State Mandate Student Transfer Form. Signed by Principal Black on July 19, 2007 stating Darien was in "Good Standing." One month after the Board of Education District 217 expelled Darien from school. The Student Withdrawal Form is dated August 14, 2007. The reason for withdrawal according to form was Darien transfer from Argo to Chicago on August 15, 2007, and was dropped because she did not enter. Gaby Wagner the Attendance lady signed the form where it clearly required the Dean's signature. There are no notices of suspension or right to review regarding the alleged incident that Darien was accused on May 23, 2007. There are no incident notes. No incident reports on the any of the alleged incidents that occurred on May 23, 2007. There is no Alternative Educational Plan (AEP) in Darien's Student Temporary Record. There is no Alternative Education Plan in Darien's Hillside record. There is no indication that a meeting was ever schedule, took place or that Darien or I was afforded the right to attend any meeting, at Argo or Hillside regarding Darien alternative between Hillside administrators, Argo administrators, and Ms. Weaver.

204.     Ms Weaver was informed by Principal Black that the district was unsuccessful with securing transportation so that Darien could start school on time at Hillside. According to Principal Black, Superintendent Stout instructed her to tell me that my children must attend Hillside's Chicago Campus. Ms. Weaver does not accept. Ms. Weaver asker for the telephone number to the Chicago Campus to schedule a tour of the campus.

205.     Darien had not started school yet. According to Principal Black Argo was unsuccessful with obtaining transportation. Ms. Weaver went to Hillside (Chicago) on September 10, 2007. Ms. Weaver is not pleased with what she saw while children and she waited to take tour of the Campus. Before the tour begins Ms. Weaver telephones Principal Black at Argo to tell her that she did not want her children attending the Hillside Chicago Campus. Principal Black said that I would have to talk to Superintendent Stout because he had made the

decision. Ms. Weaver telephoned Dr. Stout expressing my concerns to him.
He states he was unaware that we were re-directed to Hillside (Chicago
Campus) and if Ms. Weaver wasn't pleased go over to Hillside Campus. Ms.
Weaver explained to Superintendent Stout that Principal Black said the district
was unsuccessful with obtaining transportation. Darien has not attended
school yet. Ms. Weaver still took the tour of the school because I had made
the requested to have it scheduled. Just before the tour Dean little shows up at
the school she states Principal Black told her to come to the Campus after she
had spoken with Ms Weaver.

206.    When we arrived at the Hillside (Hillside Campus). We were escorted through
the building by the program director Ms Nancy Mutterer. We signed
transportation forms. Ms. Weaver asked for a copy of the forms that I
completed with Dean Little on August 29, 2007, informing Ms. Mutterer the
Little said Hillside Academy would provide copies of the documents Ms.
Weaver had just signed. Ms. Mutterer program direct of Hillside Academy
said that Ms. Weaver would have to get any copies of records from Argo.
Darien begins school on September 10, 2007, school started September 04,
2007.

207.    September 26, 2007 I was notified that the school had contacted the
Department of Children Family Services. Claiming that I had abused Darien. I
was told to bring my children to the office. In route to the office I received a
call not to come, there was no available investigator would. We agreed that
they would come to the house the following day. Darien is stays home from
school of on September 27, 2007 to meet with (DCFS) investigators. They
state that it was over-exaggerated and believed that the charges would be
unfounded.

208.    On October 15, 2007 Ms. Weaver telephoned Principal Black to inform her
that Darien would not be in school due to her being hospitalized. Ms. Weaver
told Principal Black that I did not know when she would released, so Ms.
Weaver would be calling on a day to day basis keeping her notified.

209. On October 16, 2007. Ms. Weaver called Principal Black to inform her that Darien would not be in school, she was still in the hospital. Principal Black wanted to know the name of the hospital and why she was there. When my children are released and able to attend school, I will inform you. Principal Black states that since they do not have any verification of the status or where about of the children they would be contacting the Department of Children and Family services.

210. Ms. Weaver telephoned Principal Black back to ask her about the (DCFS) threats but reached the principal's voicemail. She left message asking her to return the call, then she telephone Superintendent Stout to inform him about Principal Black threats regarding the (DCFS). Superintendent Stout said that he agrees with Principal Black actions stating that because they could not verify what hospital my children were in, that they had no there options but to contact the (DCFS). I know where my children are and I have followed the attendance guidelines by informed you that I'm aware of the absences. I do not have to give any other details.

211. Ms. Mutter the program director at Hillside telephones me later that day per Principal Black. Inquiring about the name of the hospital my children were in and the reason for hospitalization. Ms. Weaver informed Ms. Mutterer that Darien was in the hospital and had been since October 14, 2007 and I would inform them when she is released from the hospital and able to return to school. Told Ms Mutterer that I had signed forms at the hospital that would only allow academic information be shared between the hospital and Hillside Academy. That I did not want Argo administrators accessing any information from the hospital concerning my children. Because I felt that their actions were the cause of the stress my children had experience. I asked Ms. Mutterer how my children were attending Hillside Academy without hearings or meetings. How were my children in attendance at Hillside Academy without and (AEP) meeting planned, set, or a plan in place regarding the academic and behavior components?

212. Ms. Mutterer offered no explanation to any of the question that I asked her concerning my children's placement at Hillside. She just listens to me every now and again inquire about the name of the hospital. Ms. Mutterer ended the telephone conversation by telling me to inform them of any change that I could contact her or Ms. Schneider the school's social worker at Hillside.

213. October 18, 2007. I submitted a written request to Principal Black at Argo in her office. The request asks that Argo amend Darien's Student Temporary Record because the information, documents, and forms in her Temporary Records was inaccurate, misleading, and in violation of my child's rights. I requested a hearing to challenge the entries in her Temporary Record. Listing my reason(s) as; no entries by any administrator(s) or teachers(s) regarding disciplinary infractions and sanctions. The record was missing relevant information. No incident notes or reports regarding the incident in which Darien was expelled for. The entries listed concerning May 23, 2007 all refer back to the Hearing Officer's report instead of the incident notes or incident reports.

214. After leaving Principal Black's office I went to Superintendent Stout's office and Principal Black follows. I submitted to the Superintendent copies of the exact request I had just given Principal Black. While there they both continue to inquire about the name of the hospital my children were at. Not once did they ask how they were doing. I asked Superintendent Stout, Why I had never received a letter from the District regarding the duration of Darien's expulsion? Why there was nothing in her Temporary Record regarding the alleged misconduct prior to the hearing held June 01, 2007. Where were the incident notes or incident reports? Everything either refers you to the Hearing Officer's notes at the hearing or the hearing report, the Board of Education Districts 217 decision to expel Darien at the Board meeting on June 06, 2007. Principal Black exits the room and returned with a letter dated June 12, 2007, stating that the school District 217 Board of Education expel Darien for the 2007-08 and 2008-09 school years on Monday June 06, 2007 at the regular board meeting. I informed Superintendent that I did not receive a copy of the

letter until the day I registered my children on August 29, 2007 from Dean Little and only after Ms. Weaver told her that I hadn't received anything. Principal Black states that she mailed me a certified copy. Ms. Weaver replied. She had not and this is an example of the reason I wanted a hearing.

215.    I also informed Superintendent Stout that I received Darien's Unofficial Transcript Principal Black certified mail on August 2, 2207. That included also was an Illinois Stated Board of Education. Student Transfer mandated Form, signed but not dated by Principal Black stating Darien was "not" in good standing but list no specific dates. That when I received her Temporary Records August 31, 2007 and September 06, 2007 the ISBE form inside of record. Indicated Darien was "in" good standing as of July 19, 2007 signed by Principal Black. I gave both forms to Dr. Stout to review. He tried to keep the forms but I requested them back Dr. Stout asked me what I want from them. That they were already spending twice as much on each of my children than they spent on five students in attendance at ACHS. What does that have to do with Principal Black's actions or any administrators regarding procedure and protocol? Dr. Black was aware that Darien was expelled by the Board on June 06, 2007, she was there. So why did she complete the ISBE form stating she is "in" good standing, as of July 19, 2007. Superintendent Stout points out that according to this the Board expelled Darien for two years. And says that I could keep the copy. I asked Dr. Stout if the entry here states Darien was expelled by Board, then why is it not listed or entered in her Student Temporary Record. Ms. Weaver is informed that because of refusal to given name of the hospital, October 18, 2007 Darien is placed in a drop/hold status at Hillside.

216.    On October 23, 2007 Darien was released from the hospital with Doctor's permission form to return back to school on October 24, 2007. Ms. Weaver telephoned Principal Black at ACHS and Ms. Mutterer at Hillside to inform them of this and to advise Hillside to send transportation for Darien. Ms. Weaver was informed that she could not return back to school until I present her discharge information. Stated that the form the doctor provided me was

not sufficient. That Ms. Weaver should call the hospital. When Ms. Weaver called the hospital the nurse informed me that it was the only form given or needed to return to school. Darien was not allowed to attend school until October 2, 2007.

217.    On October 27, 2007 Receive letter from DCFS the letter is in regards to the call initiated by the school stating I abused Darien. The letter stated; after an initial investigation they've determined that there was no reason for DCFS to continue their inquiry, and had concluded there involvement in the matter. Yet, Principal Black continues to make accusations that Darien is still showing signs of abuse, but fails to states indicated what the abuse is.

218.    On October 29, 2007 called Superintendent Stout inquiring about the status of the hearing to Challenge records. He informed me that it would not be a hearing, but I was welcome to come in and discuss any concerns that I might have with the Temporary Records. I have already informed you of my concerns Ms. Weaver stated. Superintendent Stout arranges a meeting on October 2007.

219.    Ms. Weaver met with Superintendent Stout and Principal Black. They did not have any notes, documents, or records of Darien's. Dr. Stout said that they were unable to locate the Temporary records. I told the superintendent that I didn't mind waiting while they located the record. Neither of them made any attempt to locate the Record while I was there. For the duration of the meeting they never answer any of my questions or address any of my concerns. Principal Black and Dr. Stout refuse to honor my request.

220.    November 2, 2007 Superintendent Stout sends me a letter by certified mail. Stating that his response to the correspondence that I handed him on October 18, 2007. (On October 18, 2007 I submitted a request to amend and challenge the information in Darien's temporary record). Dr. Stout letter said that my letter did not spell out what was inaccurate and misleading; you mention a few things that were clarified in the meeting. If further clarification was needed he would be glad to discuss with me. Letter 2 asked for a hearing to challenge the entries in the temporary record and Letter 3 said that there were no entries or

notes on Darien's expulsion. Superintendent Stout states that the hearing report includes all of the information pertinent to the said expulsion, that I received a copy of the report, attended the hearing and the Board meeting. That I was sent a letter from Principal Dixey outlining Darien's two year expulsion. Superintendent Stout refused to give me a hearing.

221. My children continue to complain to me about the staff(s), student(s), and academics at Hillside. The district Administrators refuse to acknowledge my concerns. I located the Deputy Super. Dr. Predonna Roberts in Westchester, Illinois and informed her of what we was experiencing at Argo. Allowing her to r view the forms I had received from the District 217 administrators. Dr. Roberts said I needed an attorney.

222. On December 21, 2007. Called the District to inquiring about the status of my hearing regarding my challenge to the temporary records. Principal Black said that there would be no hearing. Shortly afterwards Attorney Crumley telephone me to inform me not to call the school any more, that I was harassing them. To call her from this point regarding anything at Argo. That there will be no hearing and she will send me the documents attesting to this by over night mail. It was the last day before Christmas Break and she said she was going out of town.

223. I immediately telephone Attorney Beth Cunningham from the coalition and informed her of what Attorney Crumley and Principal Black had said to me. On December 21, 2007 Beth then sent notice to Attorney Crumley telling her that the law project of the Chicago coalition for the homeless would be representing my children and me. To submit copies of Darien's Student Temporary Records regarding; including but not limited to any material of any nature that relates to expulsion, suspension, exclusion or other discipline from Argo.

224. January 2008 Darien does not or allowed to return to Argo as we were told in August 29, 2007. While at Hillside Darien has been quite successful remaining out of trouble with no major incidents at Hillside Academy. After

Attorney Cunningham requests the complete records I received the record yet still inaccurate and misleading on January 08, 2008.

225. While reviewing the records, in Darien's Student Temporary Record is a copy of a private investigator report. This was ordered by Superintendent Stout on May 29, 2007, the form contain some very private and personal information of mine. All of Darien's information from the hospital; such (as assessment, treatment, discharge). Without my permission or knowledge that they had requested or had obtained this information. Ms. Weaver thought she had made it clear to the hospital, Ms. Mutterer at hillside, Dr. Black, and Superintendent Stout at Argo.

226. On February 12, 2008. Principal Black and Ms. Mutterer informed me by telephone that Darien would not be able to return to school unless I provided them with information on a family matter, or sign a release authorizing Argo to obtain information. This matter did not disrupt or alter Darien's attendance in school. Ms. Weaver declined to provide information.

227. February 13, 2008. Darien tried to board the school bus that morning for school. The bus driver was instructed not to allow Darien to board without a sign medical release. At no time did Ms. Weaver ever inform Hillside Academy or Argo that Darien was under any special or restricted care per her doctor's orders. Darien or Ms. Weaver never provided hillside or Argo any written or signed notice from a doctor advising the school that Darien was under any special medical care.

228. Darien was not allowed to attend school that entire week. She was not allowed back to school until she wrote a letter to the doctor asking them to release information to the school. Ms. Weaver asked Ms. Mutterer and Principal Black to provide something in writing stating that it was legal for them to remove Darien from school involuntarily like this. We never received anything in writing nor is it indicated in Darien's Student Record that she was removed from school involuntarily by the Administration at Hillside or Argo with proper prior notice for a week.

229.   The days following I continue to request a hearing from Superintendent Stout
       about the challenge to the records. Superintendent Stout refused to act on my
       request to amend and challenge the Temporary records or the teacher choking
       Darien. Ms. Weaver went to the Suburban Office and met with Dr. Predonna
       Roberts. Again explaining Dr. Stout and the administrator's behavior and
       practices at Argo. How they were not following District policies or the policy
       of the Illinois State Board of Education. How they had not provided me a
       hearing to challenge my children's records in the required time. Ms. Weaver
       submitted the request on October 18, 2007. Ms. Weaver informed her of the
       inappropriate actions in regards to discipline, procedure and protocol at Argo.
       Dr. Roberts provided me with a complaint form to complete. She asked if I
       would supply a chronological list of the problems I had with the District to
       bring it with me along with the completed complaint form on May 16, 2007.

230.   On May 16, 2007 Ms. Weaver gave Dr. Roberts the complaint and
       chronological list of problems with district 217. Ms. Weaver explained in
       detail the specific problems with the administrators of Argo. Allowing Dr.
       Roberts to review the documents and forms in question. (State mandated
       Student Transfer, Student Withdrawal, Disciplinary forms, Handwritten Data,
       STARS Report, Falsified documents and signatures.) Ms. Weaver signed a
       release for Dr. Roberts to allow Argo to release my children's school
       information to the Regional Office of Education to the attention of Dr.
       Roberts on May 19, 2008. To date Ms. Weaver has not received any
       information regarding my complaint, or the inappropriate behavior of the
       administration at District 217 from anyone at the Regional Office of
       Education.

231.   On August 25, 2008. Darien was again ordered to attend Hillside Academy at
       the time of registration at Argo. Darien was not offered or explained to her the
       classes she would take at Hillside. Darien is not taking the required classes as
       a junior student in high school.

232.   On August 25, 2008. Ms. Weaver telephone the new Superintendent of
       District 217 Dr. Kevin O'mara. Dr. O'mara was quite pleasant it seemed. Ms.

Weaver informed Superintendent O'mara that in October 2008, she had submitted a request to amend the children's record and also to challenge the information in the record and had not received the hearing from Dr. Stout the previous Superintendent. Can you help me? Ms. Weaver told Dr. O'mara that because of this, she would be contacting Springfield and requesting the help of the State Board of Education. Dr. O'mara asked if I would give him an opportunity to review the request, that he would try to resolve it if he could. Ms. Weaver telephoned Dr. O'Mara again within a couple of days. He had not telephoned me. When Ms. Weaver spoke with the Superintendent he said that the request I spoke of was not in the files and he was unable to review them. Ms. Weaver gave Dr. O'mara the dates of my request, he said Im sorry they are not there.

233. Based on that information Dr. O'mara had given me regarding the contents of their Student Temporary Record. I submitted a request to the school District Registrar Vicki McAlpine on September 03, 2008. In compliance with the Illinois School Student Records Act, Section 50.2 through 50-4 of Illinois. To review, inspect, and obtain copies of any and all documents in Deon and Darien's Student temporary Records. All of the disciplinary information, reports of multi-disciplinary information that is of clear relevance. Any information of reports of psychological evaluation, observation or interviews conducted and teacher anecdotal.

234. Ms. Weaver received their Records on September 05, 2008. The request to Dr. Stout and Principal Black was inside of the Records. Superintendent O'mara had lied. Ms. Weaver telephoned Dr. O'mara but got his voicemail. I left a message telling him that I had received the records and the request I submitted to Dr Stout was inside of the record, asked if he could give her a call back.

235. That Monday morning, Ms. Weaver telephoned Superintendent O'mara to ask if he could allow the hearing. That I had received my children's temporary record and the request was there. Dr. O'mara stated unless I put something in

his hand specifically stating my concerns he would not grant me a hearing. He was very rude and nasty.

236.     On February 23, 2009. I submitted a request to Superintendent O'mara to challenge the entries in Darien's Student Temporary Record. So that the inaccurate, misleading information would be corrected or removed. Dr. O'mara refused to respond to any of my requests. Verbally and in writing I made a request to Dr O'mara. The letter was date February 10, 2009; the request was had submitted by certified mail on February 23, 2009 because Superintendent O'mara would not accept the letter from me. Ms. Weaver received via certified mail March 13, 2009 a letter from Dr. O'mara.

237.     Superintendent O'mara schedules a preliminary hearing March 23, 2009. At the hearing, Dr. O'mara would not allow me to ask Principal Black or Dean Burda any questions or he allow me to ask a question but would not allow them to answer. Then instructing me not to address his staff. To speak directly to him. Dr. O'mara ends the meeting. At that time I ask him if he would appoint a hearing officer because they did not reach any agreeable resolution. Everything I ask for was denied by Dr. O'mara. I also tried to submit my request in writing. I had the letter prepared before the meeting because I knew that they had no intention on giving me a fair hearing. And that I would need to submit the request for a hearing officer to be appointed in writing. Superintendent O'mara refused to accept the letter. I left the school and immediately went to the Post Office down the street from Argo and sent my request by certified mail.

238.   In February Ms. Weaver telephoned Principal Black, first to inquire about ACT/PSACT because no one had said anything about it to Darien or me. Nor had Hillside or Argo offered any prep courses or study work regarding the testing. Ms. Weaver also telephoned Darien's guidance counselor and asked if she could assist us with obtaining help with prep work regarding testing because I did not want her to miss testing like Deon had. Mrs. Marquez telephoned me to say she could attend prep classes at Argo on Wednesday at 6:00pm to 7:00pm.

239. Ms. Weaver received a letter by certified mail from Dr O'mara, on Tuesday, March 29, 2009. Indicating he had received the letter via certified mail on Tuesday, March 24, 2009, requesting a formal hearing due to "supposition" that we "did not reach a resolution" during the informal hearing held on Monday, March 23, 2009. Please review the enclosed report of the informal hearing and if you still wish to pursue a formal hearing, please re-submit your request in writing. The letter read. His report states exactly the same things he said at the informal hearing. That he denies my objection regarding inaccurate and misleading information regarding Darien's expulsion. He finds the records in the district's possession replete with adequate citations of this event. He finds the district's records to be sufficient in regards to me alleging that the district has missing or incomplete records on a disciplinary incident that occurred on or around May 23, 2008, and therefore deny my objection. You may challenge my findings if you so choose. If you wish to challenge these findings, please make written request for a formal hearing and make that request to my attention. I responded to Superintendent O'mara letter. The letter is dated March 26, 2009. In regards to my 2nd request to appoint a Hearing Officer to allow my challenge to Darien's Temporary Record. The request I submitted on February 4, 2009, listing my disagreement with how the preliminary hearing was conducted and Dr O'mara decision at the hearing. That I felt that we had not reached a resolution at the hearing. As I had stated to Dr O'mara at the informal hearing on March 23, 2009. That he has refused to appoint the Hearing Officer, refused to accept my written request on March 25, 2009. Forcing me to send the request by certified mail. Even though my initial request that I submitted on February 4, 2009, covered an informal and formal hearing within 30 days of any request, according to state regulations regarding challenge to records as of April 07, 2009. That I had not agreed to any extensions with any administrator of the district. I ask Superintendent did he understand what he was doing. Was he going to continue to ignore Illinois State Board Education regulations and guidelines? Why he was doing this. What was his accountability concerning the matter now? Given Dr. O'mara

that I told him produced the documents regarding what the administrators had done before he had arrived at the district. He chose to follow their lead. I ended this letter by stating that it was one thing to say something to me and then deny saying it, but that it would be hard to deny something when it is written in black and white. Reminding Dr. O'mara that in August of 2008. I only asked if he could help undo what the administrators of District 217 had done to my children, that I wanted my challenge. Dr. O'mara did not respond to my letter.

240.    Ms.Weaver telephoned Superintendent O'mara to request that he appoint the hearing officer. He told me not to call him anymore regarding the Hearing Officer. To submit another request if I would like a hearing.

241.    On April 20, 2009. Darien was suspended for 10 days from school. Principal Jimelo at Hillside told me that it was Argo that was suspending Darien. He would not give me any specific's only that he reports the facts to Argo. Darien was sent home from school at the end of the day, without any notice detailing specifically why she was suspended? How long she would be suspended? When she could be reinstated? No notice informing us of our right to review.

242.    During this conversation with Principal Jimelo on April 20, 2009. I was allowed to speak with Darien. Darien was not the aggressor in the incident and she was suspended by Hillside per Argo direction, even after the staff gave specific details regarding Darien's involvement in the incident.

243.    Principal Jimelo indicated that he did not want to suspend Darien. He agreed with me that Darien had not been involved in any fight since she started school at Hillside and was an Honor Roll Student.

244.    On April 21, 2009. I went to Argo to address some concerns about my younger son. When I arrived at the school sometime after 7:00am. The security guard issued me a pass after reviewing my identification and telephoning Gaby Wagner the attendance secretary and informed her we were there to see her. She then instructed us to go to the dean's office where Ms Wagner office is located.

245. Once there Ms. Weaver spoke with Ms. Wagner, Ms. Giles, Dean Frushner and Dean Bartosiewioz also was aware of my present in the building. Dean Bartosiewioz was the one who actually went and got Ms. Giles so that could speak with her. After speaking with them Ms. Weaver proceeds to the counselor office to speak with Ellen Marquez my children's guidance counselor

246. As Ms. Weaver walk up the stairs, I notice Superintendent O'mara at the top of the staircase outside of the counselor office. Dr. O'mara shouted Ms. Weaver what are you doing here? You can not be in the building. Why? I asked. He asked me to leave. I informed Dr. O'mara that I was there in regards to my younger son. Unless he was informing me of the date that my hearing would take place, because it had been 60 days since I submitted my request not to say anything to me and we proceed to Ms. Marquez office. Dr. O'mara said leave the building you are trespassing; he would will call the police. I told him to go ahead that I had not did anything wrong. I have a right to be here my son attends this school. I am tired of the threats about the police. I am not a criminal nor was I disruptive at any time.

247. Ms. Weaver entered Ms. Marquez office and Dean Naught followed. He stated if you do not want to be embarrassed I suggest that you leave, the police is on the way. I continued to try to explain to Ms. Marquez my concerns about but could not because Dean Naught kept interrupting. Ms. Marquez said Ms. Weaver how about I gather Brandon's file and telephone you and we discuss it over the phone. I agreed. When I entered the hallway, Dr. O'mara and two Summit Police Officers were waiting in the hall. Superintendent O'mara was smiling. The officer said that I was trespassing according to the Superintendent. Dr. O'mara states that he notified me by certified mail and that I signed the receipt and he has a copy in my children's record. Ms. Weaver asked the officer if he could have Dr O'mara to retrieve it. The officer said that we would have to handle it in court.

248. Ms. Weaver was handcuffed and escorted out of the building, by one of the officers. Once I arrived at the police station, I began to cry, shake and vomit

during processing. Sometime during this I collapsed, fell and hit the floor. Falling face first and hitting my head. I remember someone saying that they had called the paramedics, and then I remember the paramedics helping me up off the floor into a chair. Ms. Weaver was told by them to go with them to the hospital; I refused because the Officer said that I was getting an I-bond and would be released shortly and if I went with the paramedics the process would take longer. I signed a form stating the paramedic would not be liable if something happens to me. The Officers processed me and then drove me back to my car at Argo. Instructing me to leave the premises. I left the school and pulled into the gas station on Harlem where I believed I sat for about 20-30 minutes then went home.

249. On April 22, 2009. Ms. Weaver received a telephone call from Principal Black regarding my request for the check for transportation for my children. I had been requesting assistance but Dr Black would not respond. Any request I made had to go through Principal Black. This was not the procedure that I normally followed. I was informed by Diane Parks that my request had to be approved by Dr. Black before she cuts a check fro my children. Principal Black did not and would not supply the funds adequately or regularly to Deon, Darien, or Brandon. The day after I was arrested, Dr Black telephoned to let me know that a check would be cut for Brandon's transportation and she would give the check to Brandon on April 23, 2009. She said she would not be supplying Deon with any transportation because he had not come to tutoring. Dr. Black had not been supply him any cards so he could not come. She refused as usual to speak with me concerning my son, stating I could have Deon call her, about not receiving transportation and she will talk to him about it. Deon had given Superintendent Stout a letter on January 06, 2009, informing the district that they could discuss his educational concerns with Ms Weaver. The transportation checks had always been made out to Ms Weaver regarding Deon, Darien, and Brandon.

250. During the call Ms. Weaver asked Principal Black where the notice was regarding Darien being suspended on April 20, 2009. She stated that she spoke with Jim Jimelo and he informed her that he spoken with me and gave me notice on Monday. Again Ms. Weaver stated to Principal Black that Principal Jimelo did not give me any specifics when he spoke with me. That he informed me the Argo was who initiated the suspension. Darien did not receive any notice regarding this suspension. Dr. Black stated that she had spoken with Mr. Jimelo earlier during the day and she informed him to put it in writing and to send it out to me.

251. On April 22 Ms. Weaver received a letter from Dr. O'mara Superintendent of Argo District 217. I also received a post card dated April 22, 2009 informing me to pick up a large letter from Argo, after April 23, 2009. Both letters was dated April 21, 2009. The day that Superintendent O'mara had me arrested by the Summit Police Department because I want to speak with my son's counselor. The letter informed me that a Hearing Officer would be appointed regarding Darien's Temporary School Records. The Hearing is schedule for Thursday, April 30, 2009 at 10am. I submitted my request regarding Darien's Temporary Record February 25, 2009. The entire procedure was supposed to take place within 30 days; this includes an informal and formal hearing.

252. On April 23, 2009. I received two envelopes from Argo. Enclosed in both letters was an Argo Report of Suspension. The letter is dated April 21, 2009. The alleged incident that Darien was suspended occurred on April 20, 2009. Darien was allowed to remain at school until the end of the day. It is hard to decipher which Dean sent the letter because the signature was not readable.

253. During my phone conversation with Principal Black on April 22, 2009, Dr Black stated that she had just spoken with Mr. Jimelo and asked if he could put the information regarding Darien's suspension in writing that day and asked him to sent it out to me. This was two days after Darien was suspended. I had not received anything from Hillside Academy or Principal Jimelo regarding the incident that Argo suspended Darien for on April 20, 2009, as of

April 22nd. This notice is in an envelope from Argo. It is post dated April 22, 2009. The heading reads Argo Community High School. The notice is dated a day after the incident occurred on April 20, 2009 and was mailed two days after the incident from Argo. The day that I ask Principal Black about the notice of suspension Darien did not receive when she was told of the suspension.

254. On April 27, 2009. Ms. Weaver received a letter from Hillside Academy from Principal Jimelo regarding Darien's suspension. The letter is dated April 24, 2009. It reads: Per our conversation on Monday, April 20, at 1:30pm, you were informed of an altercation involving your daughter Darien and another student while attending Hillside Academy. You were informed that upon speaking to Ms. Bartosiewioz at Argo, and based on Argo's Zero Tolerance policy regarding physical aggression, that Darien's involvement would result in a (10) ten day suspension.

255.

256.

257. On April 30, 2009 I received a letter from Principal Black dated April 27, 2009. The letter stated that on April 20, 2009 Darien was involved in a physical altercation at Hillside, and was suspended for (10) ten days. According to the Argos's disciplinary policies, a student who engages in a physical altercation with another student on school grounds is recommended for expulsion from school for a period of one semester.

258. Because Darien is currently almost finished with a two-year alternative placement, we do not feel it is in her best interest to recommend another period of expulsion. Accordingly, the administration of Argo High School will recommend that Darien's suspension be limited to the ten (10) day period assigned by Hillside.

259. As condition of her return to Argo for the summer term 2009, Darien will be required to sign and abide by the attached behavior contract. Darien's success at Argo is very important to us, and we believe she is fully capable of meeting the expectations set forth in the contract.

260.    In the event Darien fails to abide by the terms of the attached contract, the administration will adhere strictly th the discipline policies set forth by the school and will recommend expulsion from school if her behavior warrants this consequence. Moreover, if Darien commits an expellable offense, alternative educational placement will not be offered.

261.    Please sign and date the enclosed behavior contract. Darien will not be permitted to return to class until we have received the signed contract. If you have any questions, please free to contract me. Copies were sent to Beth Cunningham, Ryan Naughton, Ellen Marquez, Dr. David Frusher, and Dana Fattore-Crumley. Contract Reads.

262.    Student's responsibilities: As a condition of your enrollment at Argo Community High School, you agree as follows:

1)  To attend each and every class unless excused by your parent or school personnel;

2)  To complete all assignments and homework as specified by your teachers and to come to class fully prepared (with pencil, paper, books, etc);

3)  To maintain passing grades in all classes with a grade point average of C or higher

4)  To follow all school rules and participate constructively in the school environment;

5)  Not to bring any weapon of any kind to school, school activities or on the school bus;

6)  To retrain from fighting; physical and/or verbally, with students and school personnel;

7)  To refrain from any other activities at school or on the school bus which could be considered dangerous or illegal; and

8)  To cooperative with the principal or her designee if they request to question you. If Darien Weaver violates this contract in any respect, the Board of Education may initiate appropriate disciplinary proceedings, up to and including the recommendation that Darien be expelled from school without

the opportunity for alternative educational placement. Your signature below signifies that you read and understand this contract.

263. Parent's responsibilities:

1) Ensure that Darien Weaver attends school;

2) Encourage Darien Weaver to meet the expectations set forth above.

264. If Darien Weaver violates this contract in any respect, the Board of Education may initiate appropriate disciplinary proceedings, up to and including the recommendation that Darien be expelled from school without the opportunity for alternative educational placement. Your signature below signifies that you read and understand this contract

## VI. REQUISITES FOR RELIEF

265. As a direct and proximate result of the conduct of Defendant described above, Plaintiffs have been denied their Constitutional and statutory right as stated below and have been damaged in an amount which is not yet known. Plaintiffs will seek leave of Court to amend this complaint to conform to proof at the time of trail. Plaintiffs have suffered and continue to suffer physical, mental and emotional distress, humiliation, embarrassment, discomfort and anxiety.

266. Defendant's polices practices and conduct and acts alleged here have resulted and will continue to result in irreparable injury to Plaintiffs, including, but not limited to, further violations of their statutory and Constitutional rights. Plaintiffs have no plain, and adequate or complete remedy at law to address the wrongs describe here. Plaintiffs therefore seek an injunctive relief, restraining Defendants from continuing to engage in and enforce the unconstitutional and illegal policies, practices, conduct and acts described here.

267. Defendants acted in violation of Plaintiffs legal and constitutional rights and have directly and proximately caused the Plaintiffs mental and emotional pain, humiliation and suffering. As a direct, legal and proximate result of Defendants violations of Plaintiffs statutory and constitutional rights, Plaintiffs have been damaged in an amount which is not yet known. Plaintiffs will seek leave of court to amend this complaint to conform to proof at time of trail.

268. Defendants in various personal and official capacities acting under color of law, instituted, authorized, tolerated, ratified, permitted and acquiesced in policies, practices, and customs that unlawfully excluded Student Plaintiffs from school or unlawfully reassigned Student Plaintiffs from regular educational programs to substandard, alternative educational programs without due process of the law.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Infringement of Procedural Due Process Rights violation of the 14th Amendment to the United States Constitution, 42 U.S.C. Section 1983, and Article I, Section 1, 2, and 5 of the Illinois Constitution.

269. Plaintiffs alleged and incorporate by reference paragraph 1 through 268 above.

270. By their policies and practices that excluded Student Plaintiffs from comprehensive school programs without providing sufficient notice and a proper hearing. Defendants acting under color of law have violated and continue to violate Plaintiffs rights to procedural due process under the Fourteenth Amendment to the United States Constitution (giving rise to Plaintiffs claims under Article I Section 1, 2, and 5 of the Illinois Constitution.

271.    As a direst and proximate result of Defendants violation of Student Plaintiffs procedural due process rights, Plaintiffs have been damaged in an amount subject to proof at trail and will continue to injure by Defendants unlawful policies. Unless Defendants are enjoined, Plaintiffs will be irreparably harmed.

## SECOND CAUSE OF ACTION

Infringement of Substantive Due Process Rights Violation of the 14th Amendment to the United States Constitution, 42 U.S.C. Sections 1983

272.    Plaintiffs re-alleged and incorporate by reference by paragraph 1 through 271 above.

273.    By their polices and practices of inter alia, (1) completely excluded Student Plaintiffs from school for alleged infractions of the District's student conduct rules, irrespective of the alleged behavior ; (2) reassigning Student Plaintiffs to "alternative schools that do not offer the same comprehensive curriculum and educational curriculum and educational opportunities as comprehensive schools for alleged infractions of the District's student conduct rules, irrespective of the alleged behavior; and (3) reassigning Student Plaintiffs to isolated, under staffed, independent study programs that do not offer the same comprehensive curriculum and educational opportunities as comprehensive schools for alleged infractions of the District's student conduct rules, irrespective of the alleged behavior, when there exist other reasonable and lawful means to deter such alleged infractions which would be less restrictive of Student Plaintiffs public rights and personal liberties. Defendants have violated and continue to violate Student Plaintiffs right to substantive due process under the Fourteenth Amendment to the United States Constitution (giving rise to Plaintiffs claim under 42 U.S.C. 1983).

274.    As direct and proximate result of Defendants violations of Student Plaintiffs
        substantive due process rights. Plaintiffs have been damaged in an amount
        subject to proof at trial and will continue to be injured by Defendants unlawful
        policies and procedure. Unless Defendants are enjoined, Student Plaintiffs
        will be irreparably harmed.


### THIRD CAUSE OF ACTION

Discrimination on Account to freely exercise any right or privilege or having tried to
exercise the right or privilege. Violation of the 14th Amendment to the United States
Constitution and 42 U.S.C. Sections 1983.


275.    Plaintiffs re-alleged and incorporate by reference paragraph 1 through 274
        above.

276.    Plaintiffs are informed and believe and therefore allege that Defendants
        conduct, in excluding Student Plaintiffs from comprehensive educational
        programs as described in this complaint, was undertaken because of Plaintiffs
        right to/freely exercise any right or privilege secured to Plaintiffs by the
        Constitution and having tried to exercised this right.

277.    Defendants have violated Plaintiffs right to be free from discrimination
        because of the right to freely exercise any right or privilege and or having
        tried to exercised this right as guaranteed by the Fourteenth Amendment to the
        Untied States Constitution (giving rise to Plaintiffs claim under 42 U.S.C.
        1983.


### FOURTH CAUSE OF ACTION

Discrimination on Account of Right to freely exercise the Right or Privilege or
having exercised this Right or Privilege. Violation of Article I Section 2 of the Illinois
Constitution.

278. Plaintiffs re-allege and incorporate by reference paragraph 1 through 277 above.

279. Plaintiffs are informed and believe and therefore allege that Defendants conduct that excluded Student Plaintiffs from comprehensive educational programs as describe in this complaint, was undertaken because of right to freely exercise any right or privilege or having exercise this right or privilege.

280. Defendants have violated Plaintiffs right to freely exercise any right or privilege secured by Article I Section 1, 2 and 5 of the Illinois Constitution.

FIFTH CAUSE OF ACTION

Violation of the Illinois Complied Statue.

281. Plaintiffs re-allege and incorporate by reference paragraph 1 through 280 above.

282. Defendants' at all relevant times, have been recipients of financial assistance from the State of Illinois.

283. Plaintiffs are informed and believe and therefore allege that Defendants conduct, that excluded Student Plaintiffs from comprehensive educational programs as described in this complaint, was undertaken, because of having tried to exercise the right or privilege.

284. Defendant's conduct, as allege above, violates Plaintiffs right to be free from discrimination for freely exercising any right or privilege.

SIXTH CAUSE OF ACTION

Infringement of rights under Article I, Section 1 and 2 of the Illinois Constitution.

285. Plaintiffs re-allege and incorporate by reference paragraph 1 through 284 above.

286. By their policies and practices , inter alia, (1) that completely excluded Student Plaintiffs from school for alleged infractions of the District's student conduct rules, without requisite notice and a proper hearing, and irrespective

287. of the nature of the alleged behavior, (2) reassigning Student Plaintiffs to alternative school program that do not offer the same comprehensive curriculum and educational opportunities as comprehensive curriculum and educational opportunities as comprehensive schools for alleged infractions of the District's student conduct rules, without requisite notice and a proper hearing, and irrespective of the alleged behavior, Defendants have denied Student Plaintiffs their fundamental right to an education under Article X Section 1 and 2 of the Illinois Constitution.

288. As a direct or proximate result of Defendants violation student's rights under Article X Section 1 and 2 of the Illinois Constitution, Student Plaintiffs have been damaged in an amount subject to proof at trail and will continue to be injured by Defendants unlawful policies and practices. Unless Defendants are enjoined, Student Plaintiffs will be irreparably harmed.

## SEVENTH CAUSE OF ACTION

Infringement of the Rights under Illinois Complied Statues 105 ILCS 5/10-22. (a),(b) et seq. and 105 ILCS 5/13 A-2.5, 105 ILCS 5/13A-4, 105 ILCS 5/13A-5, 105 ILCS 5/13A-9.

289. Plaintiffs re-allege and incorporate by reference paragraph 1 through 288 above.

290. By their policies and practices of, inter alia, (1) that completely excluded Student Plaintiffs from school for alleged infractions of the District's student

conduct rules, without requisite notice and a proper hearing, and irrespective of the nature of the alleged behavior; (2) reassigning the Student Plaintiffs to alternative schools that do not offer the same comprehensive curriculum and educational opportunities as comprehensive schools for alleged infractions of the District's student conduct rules, without requisite notice and a proper hearing and irrespective of the alleged behavior; and (3) reassigning Student Plaintiffs to isolated, understaffed, independent study programs that do not offer the same comprehensive curriculum and educational opportunities as comprehensive schools for alleged infractions of the District's student conduct rules, without requisite notice and a proper hearing and irrespective of the alleged behavior, Defendants have de facto expelled Student Plaintiffs without complying with the statutory procedures mandated by Sections 105 ILCS 5/13a -2.5, 5/13A-4, 5/13A-5, 5/13A-9 and 105 ILCS 5/10-22.6 (a),(b) of the Illinois School Code of Education and thereby violated Student Plaintiffs right under those statutory provisions.

291. As a direct and proximate result of Defendants violations of student rights under Section 105 ILCS 5/10-22.6 (a),(b) and 105 ILCS 5/13A-2.5, 5/13A-4, 13A-5, 13A-9 of the Illinois School Code, Student Plaintiffs have been damaged in an amount subject to proof at trail and practices, unless Defendants are enjoined, Student Plaintiffs will be irreparably harmed.

## EIGHT CAUSE OF ACTION

Infringement of right under Illinois Complied Statue under 105 ILCS 5/10-22.(a) (b), 105 ILCS 5/13A-2.5, 105 ILCS 5/13A-4, 105 ILCS 5/13A-5 and 5/13A-9.

292. Plaintiffs re-allege and incorporate by reference paragraph 1 through 291 above.

293. By their policies and practices of inter alia, (1) that completely excluded Student Plaintiffs from school for alleged infractions of the District's student

291.  As a direct and proximate result of Defendants violations of student rights under Section 105 ILCS 5/10-22.6 (a),(b) and 105 ILCS 5/13A-2.5, 5/13A-4, 13A-5, 13A-9 of the Illinois School Code, Student Plaintiffs have been damaged in an amount subject to proof at trail and practices, unless Defendants are enjoined, Student Plaintiffs will be irreparably harmed.

## EIGHT CAUSE OF ACTION
Infringement of right under Illinois Complied Statue under 105 ILCS 5/10-22.(a) (b), 105 ILCS 5/13A-2.5, 105 ILCS 5/13A-4, 105 ILCS 5/13A-5 and 5/13A-9.

292.  Plaintiffs re-allege and incorporate by reference paragraph 1 through 291 above.

293.  By their policies and practices of inter alia, (1) that completely excluded Student Plaintiffs from school for alleged infractions of the District's student conduct rules, without requisite notice a proper hearing, and irrespective of the nature of the alleged behavior, (2) reassigning Student Plaintiffs to alternative school program that do not offer the same comprehensive curriculum and educational opportunities as comprehensive schools for alleged infractions of the District's student conduct rules, without requisites notice and a proper hearing, and irrespective of the alleged behavior, defendants have reduced Student Plaintiffs under Section 105 ILCS 5/10-22.6(a),(b), 105 ILCS 5/13A-2.5, 105 ILCS 5/13A-4, 13A-5, 13A-9 of the Illinois School Education Code.

294.  As a direst and proximate result of Defendant's violations of students rights under sections 105 ILCS 5/10-22.6(a), (b) and 105 ILCS 5/13A-2.5, 13A-4, 13A-5 and 13A-9 Plaintiffs have been damaged in an amount subject to proof at time of trail and will continue to be injured by Defendants unlawful policies and practices. Unless Defendants are enjoined, Plaintiffs will be irreparably harmed.

## NINTH CAUSE OF ACTION
Declaratory Relief

295.  Plaintiffs re-allege and incorporate by reference paragraph 1 through 294 above.

296.  An actual, present and justiciable controversy has arisen and now exists relating to Defendants duties and responsibilities under the United States and Illinois Constitution and provisions of the Illinois School Code, specifically those statutes and laws governing the school discipline process. Plaintiffs contend that Defendants policies and practice as describe herein violate these statutes and law.

297. A judicial determination concerning Defendants duties and responsibilities is necessary and desirable, specifically a declaration as to Defendants duties and responsibilities under the statutes and laws described above. Plaintiffs fear that they will again be subjected to Defendants unlawful and unconstitutional actions and seek a declaration ensuring that Student Plaintiffs will receive the full benefits of their rights under law and the educational programs to which are entitled.

## VIII REQUESTED RELIEF

Wherefore, Plaintiffs respectively pray that this Court.

1) Declare that this action may proceed.
2) Declare that Defendants exclusion of Student Plaintiffs from comprehensive school programs to alternative school programs and independent study programs for alleged violations of the District's student conduct rules violates Student Plaintiffs right under the United States Constitution, the Illinois Constitution and the laws of the State of Illinois.
3) Preliminarily and Permanently enjoin Defendants from authorizing or participating in any practice that excludes Student Plaintiffs from school or reassigns Student Plaintiffs from comprehensive school programs to Alternative school programs and independent study programs or reassigns Student Plaintiffs from comprehensive school program to any non-comprehensive school program for alleged violations of the District's student conduct rules, unless Defendants provide proper notice and a hearing pursuant to Section 105 ILCS 5/10-22.6(a), (b) and 105 ILCS 5/13A-2.5, 13A-4, 13A-5 and 13A-9 of the Illinois School Code.
4) Order Defendants to provide the following remedial measures for Student Plaintiffs:
   a)Expunge and/or modify student records to reflect that the exclusion of Student Plaintiffs from comprehensive school programs and the reassignment of Student Plaintiffs from comprehensive school programs to alternative school programs and independent study programs was unlawful and to remove any reference to any student conduct of incident related to the exclusion or reassignment of Student Plaintiffs;
   b)Provide an educational assessment conducted by a qualified assessor of the Plaintiffs choice to determine the extent to which remedial education services should be provided to Student Plaintiffs for the denial of comprehensive educational programs;
   c) Provide such remedial educational services as recommended by the qualified assessor and ensure that such services are provided by a fully certified and qualified services provider;
5) Monitor the Districts implementation of the injunctive and remedial Measures ordered by this Court in a manner deemed appropriate by the Court;

6) Award compensatory and general damages in an amount to be proven at Trail against the Defendants to Plaintiffs

7) Award Plaintiffs their costs, expenses, and reasonable fees pursuant to 42 U.S.C. Sec.1988 and Illinois Code of Procedure, Section 735 ILCS 5/1-101 *et seq*

8) Grant such other and further relief as this court deems just and proper.


Date:

                              Respectfully Submitted,

                              Daphne Weaver,

                              136 North Mason
                              Chicago, IL 60644
                              773-454-9349