**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DEON HUGHES <u>et al.</u>,                )
                                          )
            Plaintiffs,                   )
                                          )
            v.                            )        No. 09 C 4942
                                          )
BOARD OF EDUCATION OF THE ARGO            )
COMMUNITY HIGH SCHOOL DISTRICT            )
217 <u>et al.</u>,                        )
                                          )
            Defendants.                   )


<u>**MEMORANDUM OPINION**</u>

Before the court are plaintiff Daphne Weaver's application to proceed in forma pauperis ("IFP") and motion to appoint counsel. We grant the IFP application and the motion to appoint counsel for the reasons explained below.

<u>**BACKGROUND**</u>

Plaintiff Daphne Weaver, on her own behalf and on behalf of her two children, Deon Hughes and Darien Weaver, has filed a nine-count, 297-paragraph complaint against the Board of Education of Argo Community High School District 217 and fifteen individual school administrators. Ms. Weaver's 42 U.S.C. § 1983 claims — procedural due process (count I), substantive due process (count II), and what appears to be a claim for retaliation based on her exercise of her constitutional rights (count III) — concern the defendants' various roles in assigning her children to "alternative

schools." On June 11, 2007, Darien Weaver was expelled from Argo Community High School ("Argo") for two years for allegedly assaulting a teacher. (Compl. ¶¶ 192-93.) Ms. Weaver contends that neither she nor her daughter received adequate notice of the charges prior to the expulsion hearing convened by the school. (Id. at ¶¶ 181, 192 (alleging that she believed Darien was charged with using profanity, not assaulting a teacher).) Rather than serve an out-of-school expulsion, Darien was assigned to Hillside Academy ("Hillside"), an alternative school for "disruptive students." See 105 ILCS 5/13A-4 ("A student who is determined to be subject to suspension or expulsion in the manner provided by Section 10-22.6 . . . may be immediately transferred to the alternative program."). Towards the end of her two-year enrollment at Hillside Darien was suspended for 10 days for an "altercation" with another student. (Id. at ¶¶ 241-42, 254.) Ms. Weaver appears to challenge this suspension as well, alleging that Darien was sent home from school "without any notice detailing specifically why she was suspended." (Compl. ¶ 241.) It appears, however, that Ms. Weaver spoke with the school principal about the incident that very day. (Id. at ¶¶ 242-43, 254.) Notwithstanding the suspension, Darien was permitted to return to Argo for the 2009 summer term. (Id. at ¶¶ 258-59.)

Deon Hughes' situation is more complicated and, frankly, confusing. This much is clear: on January 8, 2007 Deon, then a

high-school junior, was expelled from Argo for one semester. (<u>Id.</u> at ¶ 40.) Ms. Weaver does not agree with the school board's decision, but she does not appear to challenge the expulsion on due-process grounds. (<u>Id.</u> (alleging that the "evidence provided at a hearing did not indicate Deon's involvement" in whatever undisclosed misconduct he was alleged to have committed).) From this point forward the complaint describes a series of disputes with school administrators about a range of issues involving Deon. For our purposes, we will focus on the dispute concerning Deon's alternative-school placement. In conjunction with his expulsion Deon was assigned to "RISE Alternative School." (<u>Id.</u> at ¶ 41.) However, the school "did not accept Deon because he refused to admit" that he had committed the misconduct that caused the school board to expel him. (<u>Id.</u> at ¶¶ 41-43.) It appears, however, that Deon was offered some sort of independent study program and then summer school, perhaps by way of an alternative to the alternative school. (<u>Id.</u> at ¶¶ 44-45, 51-52.) Deon attended summer school until July 18, 2007, when he was suspended with two days left in the session for an "incident" in the school parking lot (apparently a fight with another student). (<u>Id.</u> at ¶¶ 52, 162.) Deon did not receive "any notice of any kind from Dean Burda regarding [the] alleged incident on June 18, 2007." (<u>Id.</u> at ¶ 57.) Ms. Weaver alleges, however, that she was notified by telephone. (<u>Id.</u> at ¶

52.) Due to the suspension, Deon did not receive any summer school credit. (<u>Id.</u> at ¶¶ 52-53.)

Ms. Weaver contends that this suspension was the impetus behind the school's decision to assign Deon to another semester at an alternative school (this time, Hillside). (<u>Id.</u> at ¶ 62 ("Dean [L]ittle informed Ms. Weaver that according to Principal Black, Deon would have to attend Hillside Academy Alternative school for the alleged incident occurring on June 18, 2007.") Ms. Weaver at first "refuse[d]" to accept placement, then relented when she "realized that the dean was not going to change his mind." (<u>Id.</u> at ¶ 64.) Despite agreeing to place Deon at Hillside, albeit under pressure, Ms. Weaver contends that she demanded a hearing that very day from the school superintendent. (<u>Id.</u> at ¶¶ 65-67 ("Superintendent Stout ignored Ms. Weaver['s] request for a hearing, acting as if he never heard her.").) She alleges that she renewed her request for a hearing the following month, but received no response. (<u>Id.</u> at ¶¶ 71, 78.) Meanwhile, Deon completed most of a semester at Hillside without significant incident. (<u>Id.</u> at ¶ 75.) Then, on December 18, 2007, "Deon [was] physically assaulted at Hillside Academy by a staff member." (<u>Id.</u> at ¶ 89.) For some undisclosed reason Hillside administrators considered punishing Deon for the incident, but ultimately declined to do so. (<u>Id.</u> at ¶ 90.) Nevertheless, Argo's principal allegedly told Ms. Weaver that Deon would have to remain at Hillside because of this

incident. (<u>Id.</u> at ¶ 91.) Ms. Weaver contends that she "refused continued placement at Hillside" and requested a hearing. (<u>Id.</u> at ¶¶ 92-94.) A hearing was scheduled, then cancelled; it is unclear whether it was ever rescheduled. (<u>Id.</u> at ¶¶ 93-94.) The complaint does allege, however, that the "District refuse[d] to allow Deon to return to Argo as scheduled and he remained at Hillside for the remainder of the 2007-08 school year[]." (<u>Id.</u> at ¶ 96.) Deon ought to have graduated at the end of that semester, but did not. (<u>Id.</u> at ¶ 99.) Instead, he was again enrolled at Hillside for the 2008-09 school year. (<u>Id.</u> at ¶ 100.) Ms. Weaver alleges that Deon was enrolled in classes he had already taken, and was not offered the classes he needed to graduate. (<u>Id.</u> at ¶ 102.)

Towards the end of the fall 2008 semester Ms. Weaver requested and received a hearing addressing several of the issues she raises in this lawsuit. The complaint appears to quote extensively from the hearing officer's report, interspersed with Ms. Weaver's commentary. (<u>Id.</u> at ¶¶ 122-156.) Among other things, the hearing officer concluded that Deon was not "administratively transferred" to Hillside; instead, Ms. Weaver voluntarily enrolled him in the school. (<u>Id.</u> at ¶ 154.) Accordingly, he concluded, no hearing or other process was provided or required. (<u>Id.</u>) She could have withdrawn her permission at any time, at which point school administrators would have been required to take "proper steps to administratively transfer Deon." (<u>Id.</u>) Of course, as we just

discussed, Ms. Weaver alleges in this lawsuit that she *did* withdraw her permission. (Id. at ¶¶ 92-94.) The hearing officer informed Ms. Weaver of her right to appeal his ruling, and the complaint indicates that she at least discussed filing an appeal with school officials. (Id. at ¶¶ 156, 159, 163.) The complaint refers to a "meeting" with school officials in December 2008 or January 2009, although it is unclear whether the meeting was convened to review the hearing officer's conclusions. (Id. at ¶ 164.) At that meeting school officials refused to readmit Deon to Argo. (Id. (The "District state[d] that . . . under no circumstances can Deon return to Argo Community High School," although no one provided any "specific reason(s)" why.).) Instead, he was "ordered" to complete the semester at Hillside. (Id. at ¶ 166.) Whether or not he did so is not clear. The complaint indicates that Deon was offered tutoring and possibly independent study, with the goal of completing three remaining classes to receive his diploma from Argo. (Id. at ¶¶ 167-68.) It is not clear whether or not he completed his course work as of the date Ms. Weaver filed her complaint in this case.

## DISCUSSION

Ms. Weaver states in her financial affidavit that she is currently unemployed and that in the last twelve months she has received approximately $100 in gifts and $200 from some undisclosed self-employment. She has three dependent children and no assets.

We conclude that she has demonstrated her inability to pay court costs. It also appears that she has made a reasonable attempt to obtain counsel, and we conclude that she is not competent to litigate the case herself. Pruitt v. Mote, 503 F.3d 647, 660 (7th Cir. 2007); see also Bryant v. Board of Educ., Dist. 228, No. 08-1928, 2009 WL 3241302, *1 (7th Cir. Oct. 2, 2009) (a parent may not represent a minor child without counsel). We must also consider, though, whether the complaint satisfies any of the criteria for dismissal enumerated in 28 U.S.C. § 1915(e)(2)(B). One of those criteria is failure to state a claim on which relief may be granted. Id. at § 1915(e)(2)(B)(ii); see also Barrett v. Blaesing, No. 09-3126, 2009 WL 2050978, *1 (C.D. Ill. July 10, 2009) ("[T]he court grants leave to proceed in forma pauperis only if at least one federal claim is stated.").

"[A] student's right to a public education is a property interest protected by due process guarantees which cannot be taken away for misconduct without adherence to minimum procedures." Baxter v. Round Lake Area Schools, 856 F.Supp. 438, 443 (N.D.Ill. 1994) (citing Goss v. Lopez, 419 U.S. 565, 574 (1975)). Only minimal process is required before suspending a student for a short period of time — an explanation of the alleged misconduct, and an opportunity for the student to explain his or her side of the story, is all that is required. See Baxter, 856 F.Supp. at 443 (citing Goss, 419 U.S. at 581). The Goss Court reserved judgment

whether longer-term suspensions and expulsions might require more formal procedural protections, but our Court of Appeals has concluded that the same general safeguards apply to suspensions and expulsions alike.  See Coronado v. Valleyview Public School Dist. 365-U, 537 F.3d 791, 795 (7th Cir. 2008); see also Remer v. Burlington Area School Dist., 286 F.3d 1007, 1012 (7th Cir. 2002) (Before imposing a penalty tantamount to an expulsion, the "school authority must afford the student an opportunity to present evidence and argument in mitigation.").  In view of some of the complaint's allegations, we think it is important to emphasize that *federal* law — not state law — determines the amount of process that is due.  See, e.g., Osteen v. Henley, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, a violation of state law (for purposes of this case the student judicial code may be treated as a state law) is not a denial of due process, even if the state law confers a procedural right.").

Ms. Weaver's complaint is excessively long and she flirts with pleading herself out of court.  But bearing in mind our obligation to construe her complaint liberally, we conclude that she has stated a valid § 1983 claim based upon the defendants' alleged procedural due-process violations.  (We express no opinion concerning Ms. Weaver's other federal and state-law claims.)  With respect to Darien's expulsion, Ms. Weaver alleges that she did not receive adequate notice of the serious charges against her daughter

prior to the June 1, 2007 expulsion hearing.  She also alleges that school officials refused to consider potentially mitigating evidence.  <u>See, e.g.</u>, <u>Roger C. ex rel. Gilbert v. Valley View Public School Dist. No. 365-U</u>, No. 08 C 1254, 2008 WL 4866353, *6 (N.D. Ill. June 23, 2008)(allegations that the plaintiff did not have a sufficient opportunity to prepare for an expulsion hearing were sufficient to state a non-speculative claim for relief).  The problem, from Ms. Weaver's perspective, is that the complaint suggests that these deficiencies may have been cured at the June 11, 2007 board meeting.  However, it is not sufficiently clear from the complaint that the subsequent hearing was sufficient to cure the alleged deficiency of the earlier hearing.  If, for example, the board meeting was just a formality, then arguably Ms. Weaver did not receive a "meaningful" opportunity to be heard.  <u>Linwood v. Board of Ed. of City of Peoria, School Dist. No. 150, Peoria County, Ill.</u>, 463 F.2d 763, 770-71 (7th Cir. 1972).  Although it is a close question, we conclude that some further factual development is necessary.  Concerning Deon, Ms. Weaver alleges that she was given an ultimatum: either enroll Deon at Hillside or else the school would expel him outright.  Even if we accept the hearing officer's apparent conclusion that there was no such ultimatum, Ms. Weaver alleges that she withdrew her alleged permission to enroll Deon at Hillside after the fall 2007 semester.  In <u>Betts v. Board of Education of the City of Chicago</u>, 466 F.2d 629, 633 (7th Cir. 1972) the court characterized a transfer to a non-traditional

public school as "tantamount to an expulsion." Arguably, the same reasoning applies to long-term placement at an alternative school. At least, based only on the complaint's allegations, we cannot conclude otherwise as a matter of law. So, on one theory of the case, Deon's one-semester "expulsion" was extended without Deon or his mother receiving any meaningful opportunity to be heard. Alternatively, the expulsion period began after Ms. Weaver withdrew her consent and Deon was "ordered" to attend Hillside, again without due process. No doubt the defendants have their own version of these events, but we are concerned here only with Ms. Weaver's complaint. We conclude that these allegations are sufficient to state a non-speculative claim for relief.

## **CONCLUSION**

Plaintiffs' application for leave to proceed in forma pauperis and motion to appoint counsel are granted.


DATE:     November 4, 2009


ENTER:    _____

          John F. Grady, United States District Judge