### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DEON HUGHES et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 09 C 4942 |
| | ) | |
| BOARD OF EDUCATION OF THE ARGO | ) | |
| COMMUNITY HIGH SCHOOL DISTRICT | ) | |
| 217 et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Before the court is the defendants' motion to dismiss Counts VI and IX of plaintiffs' second amended complaint as to the "School Official Defendants,"[1] and Counts I, II and XI as to defendant Richard P. Majka.  We grant defendants' motion for the reasons explained below.

### BACKGROUND

We will assume that the reader is familiar with our earlier opinion in this case, which discussed at length the facts alleged in plaintiffs' original complaint.  Plaintiffs, with the assistance of appointed counsel, have since streamlined their allegations. But the key allegations are largely the same for our purposes here.

---

[1]  Frank Stout, Kevin O'Mara, Kathy Black, Thomas Dixey, Larry Burda, Sandra Little, and James Rodriguez.

## DISCUSSION

### A.  Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 556 (2007)).  When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint.  <u>Iqbal</u>, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

### B.  The School Official Defendants' Motion to Dismiss Counts VI and IX.

Plaintiffs allege that the defendants have violated both the Illinois School Code and the Illinois School Records Act, separate "Acts" under Chapter 105 of the Illinois Compiled Statutes.  The

Illinois School Records Act expressly creates a private right of action for damages in favor of "[a]ny person injured by a willful or negligent violation of" the Act. 105 ILCS 10/9(b). The Illinois School Code, as both parties acknowledge, does not. Instead, it makes any negligent or willful violation of its provisions a petty offense subject to fines payable to the county superintendent of schools. 105 ILCS 5/22-8. Insofar as the plaintiffs seek a remedy under § 22-8 for violations of the Illinois School Records Act, (see Second Am. Compl. ¶ 152), we think they are mistakenly conflating the two Acts. Plaintiffs appear to clarify in their response to defendants' motion to dismiss that they are seeking damages under § 22-8 for alleged violations of the Safe Schools Law contained within the School Code at 105 ILCS 5/13A-0.5 et seq. (See Pls.' Resp. at 6-7.) Even so, it is strange to speak of an implied private right of action to recover damages pursuant to, or for violation of, a provision imposing a fine. (Cf. Pls.' Resp. at 6-7; Defs.' Reply at 5.) Section 22-8 is a penalty, and the question is whether we should impose other consequences (namely, damages) for violations of the School Code's substantive provisions. See Carlson v. Bremen High School Dist. 228, 423 F.Supp.2d 823, 829 (N.D. Ill. 2006) (before implying a private right of action, courts ask whether the "remedies available are limited to those enumerated in the Act.").

Plaintiffs allege that the defendants did not create an "alternative education plan" ("AEP") for Darien and Deon, as required by § 13A-4. (Pls.' Compl. ¶ 5); see also 105 ILCS 5/13A-4 (after a student is transferred to the "alternative program," "appropriate personnel" from the transferor and transferee schools "shall meet to develop an alternative education plan for the student"). Illinois courts will imply a private right of action if:

> (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

Metzger v. DaRosa, 805 N.E.2d 1165, 1168 (Ill. 2004) (citations and internal quotation marks omitted). The explicit purpose of the Safe Schools Law, which created the alternative schools program, is to protect the majority of rule-abiding students from the minority of "disruptive students," defined as students "that have been found to be eligible for suspension or expulsion through the discipline process established by a school district." See 105 ILCS 5/13A-1 ("Legislative Declaration"); id. at § 13A-2.5 (defining "disruptive students"); see also Metzger, 805 N.E.2d at 1167 ("In construing the meaning of a statute, the primary objective of this court is to ascertain and give effect to the intention of the legislature, and all other rules of statutory construction are subordinated to this

cardinal principle."). The Legislative Declaration also refers to the educational needs of students transferred into the alternative program, see § 13A-1(e), and the AEP requirement addresses those needs. But we think it is clear that the statute's overarching purpose is to remove "disruptive students" from the traditional school program. See Metzger, 805 N.E.2d at 1169 ("When interpreting legislative enactments, we must read the statute as a whole and not as isolated provisions."); see also Fisher v. Lexington Health Care, Inc., 722 N.E.2d 1115, 1119 (Ill. 1999) (similar). Ahern v. Board of Educ. of City of Chicago, No. 92 C 4074, 1992 WL 373030 (N.D. Ill. Dec. 9, 1992) is instructive. In that case school principals sought damages under the Chicago School Reform Act (the "CSRA") claiming that their employment contracts were not renewed because of their race. Id. at *1. The CSRA, which established local school councils ("LSCs") to select principals, prohibited such discrimination. Id. at *3. The Ahern court declined to find a private right of action:

> In creating the LSCs, the Illinois Legislature did not seek to redress societal wrongs being committed against principals or those employed by school systems, but sought instead to reform the public school system by increasing community involvement in the nondiscriminatory administration of the schools.

Id. at *4. Like the CSRA, the Safe Schools Act addresses problems affecting the school system as a whole. If it was enacted to benefit any identifiable class of students, it is those students

who have not been expelled or suspended. Darien and Deon are not members of that class.

Nor do we believe that the statute was designed to prevent the injuries Darien and Deon have alleged. See Metzger, 805 N.E.2d at 1170. Again, Illinois courts ask what the statute was enacted to accomplish, not whether the plaintiff stands to benefit if a particular provision of the statute is enforced. See id. at 1169; Fisher, 722 N.E.2d at 1119; Ahern, 1992 WL 373030, *4. In Metzger, the plaintiff alleged that the defendants violated the Illinois Personnel Code's whistle-blower provision, which proscribes retaliation against state employees who report "prohibited" activities. Id. at 1166. (The plaintiff alleged that she was effectively demoted for reporting "multiple attendance abuses involving employees who were paid for days when they were not at work." Id.) A federal jury found that the defendants had violated the Personnel Code and awarded damages to the plaintiff. Id. The defendants argued on appeal that the Personnel Code does not contain a private right action, and our Court of Appeals certified the question to the Illinois Supreme Court. Id. at 1167. That court concluded that the Personnel Code was enacted "primarily to benefit the state and the people of Illinois by providing efficient government administration." Id. at 1169. Although the plaintiff clearly benefitted from enforcement of the whistle-blower provision, the court concluded that the statute as a whole "was not

primarily designed to prevent retaliation." <u>Id.</u> at 1170; <u>see also</u> <u>Ahern</u>, 1992 WL 373030, *4. Applying <u>Metzger</u>, we do not believe that the Safe Schools Act was designed primarily to prevent plaintiffs' alleged injuries: delayed graduation and continued enrollment in the alternative schools program.

We do not think it would harm the statute's purposes to recognize a private right of action under these circumstances. <u>Cf.</u> <u>Metzger</u>, 805 N.E.2d at 1170. On the other hand, as we have already discussed, the statute's general purpose does not suggest an intent to create such a remedy. And even though the presence of criminal sanctions does not necessarily foreclose implied civil remedies, <u>see, e.g.</u>, <u>Davis v. Dunne</u>, 545 N.E.2d 539, 541 (Ill. App. 1989), it does not support their creation, either. <u>See</u> <u>Metzger</u>, 805 N.E.2d at 1171 ("The legislature could have granted state employees a private right of action for damages, but it did not do so."). Moreover, we cannot say that the statute would be "ineffective, as a practical matter," if we declined to imply a private right of action. <u>Metzger</u>, 805 N.E.2d at 1170 (quoting <u>Fisher</u>, 722 N.E.2d at 1120). The sanctions available under § 22-8 encourage compliance with the statute's express terms, <u>see</u> <u>id.</u> at 1171, and a writ of mandamus may be available in appropriate cases. <u>See</u> <u>Lewis E. v.</u> <u>Spagnolo</u>, 710 N.E.2d 798, 814-15 (Ill. 1999). In sum, we conclude that there is no implied right of action under the Safe Schools Law.

**C.    Defendant Majka's Motion to Dismiss Counts I, II, and XI.**

Majka is named as a defendant in Counts I and II, alleging procedural due process violations under the United States and Illinois Constitutions, and Count XI, requesting a declaration that the defendants violated plaintiffs' rights.   As the defendants point out in their opening brief, it is somewhat unclear from the second amended complaint specifically what plaintiffs believe Majka did wrong.   Plaintiffs clarify in their response to the defendants' motion that Majka is named as a defendant solely for his role as hearing officer at Darien's expulsion hearing.   (Pls.' Resp. at 7-8.)   The complaint alleges that Majka "included only small portions of Ms. Weaver's direct examination of Darien and her cross-examination of the District's witnesses."   (Compl. ¶ 71.) Plaintiffs claim that Darien did not receive a meaningful opportunity to be heard because the school board relied on Majka's incomplete summary in expelling Darien from school for two years. (Id. at ¶ 72; Pl.'s Resp. at 7.)   The problem with this allegation, as we indicated in open court, is that even "small portions" of Darien's testimony could convey her side of the story.   At a minimum we need to know what was omitted, and why plaintiffs believe Darien was prejudiced by the omission.   Counts I, II, and XI are dismissed without prejudice as to defendant Majka.

## CONCLUSION

Defendants' motion to dismiss (37) is granted.   Counts VI and IX are dismissed with prejudice.    Counts I, II, and XI are

dismissed without prejudice as to defendant Majka. Plaintiffs may file an amended complaint by January 26, 2011 alleging what Majka omitted from his summary of the expulsion hearing and how they believe Darien was prejudiced. A status hearing is set for February 2, 2011 at 10:30 a.m. to discuss the plaintiffs' third amended complaint. Discovery in this case shall continue to proceed as to all defendants except Mr. Majka.

DATE:     January 19, 2011

ENTER:    _____

John F. Grady, United States District Judge